[Smith v. Lehman, Durr & Co ]

# Smith *v* Lehman, Durr & Co.

*Bill in Equity by Wife, to establish Resulting Trust in Lands against Mortgagee of Husband.*

1. *Usury in mortgage; protection to mortgagee as bona fide purchaser.* When the debt secured by a mortgage is tainted with usury, the mortgagee can not claim protection, as a *bona fide* purchaser, against a secret equity of which he had no notice. .

2. *Same; stipulation for delivery of cotton for storage and sale on commission, or payment of liquidated damages on non-delivery.*—In a mortgage to secure the payment of money loaned, with interest, a stipulation binding the mortgagor to deliver, for storage and sale on commission, one bale of cotton for each ten dollars loaned, or to pay, as liquidated damages, one month's storage and customary charges for selling, on the number of bales not delivered, does not render the contract usurious, *if* the mortgagee is engaged in business as a warehouseman or commission-merchant, *and* the mortgagor has a reasonable expectation that he will be able to deliver the stipulated number of bales; but, if the mortgagee is not engaged in such business, or if the mortgagor has no such reasonable expectation, the contract is usurious.

3. *Same; representations as to ability to deliver, or reasonable expectation thereof.*—When the mortgage shows on its face that the mortgagees are engaged in business as warehousemen and commission-merchants, the other stipulations, as to the delivery of cotton or payment of liquidated damages, do not make it usurious on its face; the *onus* of showing that there was no reasonable expectation (or just ground for belief) that the mortgagee could make the stipulated delivery, rests on him who assails the contract as usurious on that ground; and if it appears that the negotiations for the loan were conducted, on the part of the mortgagor, by a third person, who represented that his own firm would supply any deficiency in the delivery of the cotton, and that the loan was made on the faith of these representations, the usury is not established.

4. *Same; commissions for selling, customary or excessive.*—The customary commissions for selling being 50 cents per bale, a stipulation for the payment of two and a half per cent. commissions, or from $1.12 to $1.25 per bale, as part of the liquidated damages on non-delivery, is usurious for the excess.

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 28th November, 1885, by Mrs. Cordelia C. Smith, the wife of Stephen L. Smith, against her said husband and the several partners composing the firm of Lehman, Durr & Co., warehousemen and commission-merchants in the city of Montgomery; and sought to establish a resulting trust, to the extent of a one-half interest, in a tract of land which Lehman, Durr

[Smith v. Lehman, Durr & Co.]

& Co. had sold under a mortgage executed to them by said
Stephen L. Smith, in which the complainant joined as his
wife, two of the partners becoming the purchasers. The
mortgage was dated January 23d, 1884, and was given to
secure the payment of $1,500, money loaned or advanced by
the mortgagees, for which said Smith gave a crop-lien note
in the usual form, due October 1st, 1884; and it also bound
the mortgagor to deliver to them, by that day, 150 bales of
cotton, for storage and sale on commission, or, in default
thereof, to pay, as liquidated damages, fifty cents per bale
for one month's storage, and two and a half per cent. com-
missions, on the value of the number of bales not delivered.
The complainant claimed and alleged that the purchase-
money for the land was paid with funds belonging to her
statutory estate; that the mortgage was usurious, and that
the mortgagees were chargeable with notice of her equity.
The defendants answered, denying the charge of usury, and
denying the use of complainant's funds in paying for her
husband's half interest in the land; and they claimed that
the complainant was estopped from asserting her alleged
equity against them, and that they were entitled to protection
as *bona fide* purchasers without notice.

On final hearing, on pleadings and proof, the chancellor
held—1st, that the complainant was entitled to a resulting
trust in her husband's one-half interest in the land, "to the
extent that her money paid for it;" 2d, that this equity could
not be asserted against Lehman, Durr & Co., because their
mortgage was not usurious, and they were entitled to pro-
tection as *bona fide* purchasers without notice. The com-
plainant appeals from this decree, and here assigns as error
that part of it which declared her equity subordinate to the
claim of Lehman, Durr & Co. as mortgagees.

ARRINGTON & GRAHAM, for the appellant.—(1.) Under the
decisions of this court, a lender of money may, in addition
to the charge of legal interest, stipulate for extra compensa-
tion on account of some other risk, trouble or service,
incurred or performed; and such stipulations are sustained,
when it appears that the transaction is in good faith, and
not a mere device to avoid the statute against usury. But
this is the extent of the rule established by our decisions,
and by the cases on which they are founded.—*Brown v.
Harrison & Robinson*, 17 Ala. 774; *Swilley & Riley v. Lyon
& Baker*, 18 Ala. 552; *Dozier v. Mitchell*, 65 Ala. 511;

[Smith v. Lehman, Durr & Co.]

*Uhlfelder v. Carter*, 64 Ala. 527; *Trotter v. Curtis*, 19 Johns. 160; *Woolsey v. Jones*, 84 Ala. 88; *Matthews v. Cole*, 70 N. Y. 239; 1 M. & S. 56. Giving these decisions their fullest extent and operation, the mortgage in this case must be held usurious, (1) because it stipulates for the payment of greater commissions, as stipulated damages, on cotton not delivered, stored or sold, than is customary for cotton delivered and sold; and (2) because it requires that the 150 bales shall be delivered by the 1st October, while the court must judicially know that the cotton crop is not then gathered, nor even matured in ordinary seasons. (2.) The mortgage being usurious, the mortgagees are not entitled to protection against complainant's prior equity. *McCall v. Rogers*, 77 Ala. 349; *Wailes v. Couch*, 75 Ala. 134.

TROY, TOMPKINS & LONDON, *contra.*—The right of a commission-merchant to charge, in addition to legal interest, commissions for advances or acceptances, can not be questioned.—*Brown v. Harrison & Robinson*, 17 Ala. 774; *Swilley & Riley v. Lyon & Baker*, 18 Ala. 552; *Uhlfelder v. Carter*, 64 Ala. 527; *Dozier v. Mitchell*, 65 Ala. 511; *Matthews v. Coe*, 70 N. Y. 239; *Norwood v. Faulkner*, 22 S. C. 367; *Cockle v. Flack*, 93 U. S. 344; *Trotter v. Curtis*, 19 Johns. 160. The right to charge a greater rate of commissions when money is loaned or advanced, only involves the right to charge any commission for advances; since the charge for a sale involves no loan or forbearance. A commission-merchant agrees to make advances, procures the necessary funds for the purpose, and is allowed to charge commissions, in addition to legal interest, for his trouble and expense; and if he is also a warehouseman, he may lawfully stipulate for the delivery of cotton for storage, in promotion of his business, or the payment of damages on delivery. In prosecution of his business, and to enable him to comply with the stipulations of the mortgage on his part, he is required to make a large outlay in providing a warehouse, employing the necessary clerks and agents, and incurring other expenses incident to his business; and to secure himself against losses incident to his business, he may lawfully stipulate for an extra charge, as for commissions on advances; no distinction can be drawn between the two.

STONE, C. J.—Stephen L. Smith, husband of appellant, executed a mortgage to Lehman, Durr & Co., to secure the payment of money advanced to him, and also to deliver certain bales of cotton for storage and sale as warehousemen and commission-merchants. The mortgage conveyed, among other things, certain lands, to secure the payment of the money and the delivery of the cotton. Mrs. Smith, the wife, united in the mortgage, by proper words and certificate to bar her dower, and to legalize the conveyance of the homestead. The mortgage contained a power of sale on default, and under it the lands were advertised for sale. Before the sale was made, Lehman, Durr & Co. learned that the title to the lands mortgaged was jointly and equally in the said Stephen L. Smith and his wife, Cordelia C. Smith. They thereupon sold the undivided half interest, and Lehman Brothers, two of the members of the firm of Lehman, Durr & Co., purchased the said half interest, and received a conveyance.

The present bill was filed by the wife, Mrs. Cordelia C. Smith, and alleged that the lands, though conveyed to her husband and herself jointly, were purchased and paid for with her money—her statutory separate estate. She seeks to have a trust declared in her favor for the entire half interest so conveyed to her husband, or for such part as was purchased and paid for with her money. She also sets up usury in the mortgage made by herself and husband to Lehman, Durr & Co., and on that account charges that they are not *bona fide* purchasers, so as to cut off her equity, even though it was latent, and they had no notice of it. Under our rulings, if there be usury in the debt secured, that vitiates the defense of *bona fide* purchase, and permits an equity, even though latent, to prevail over a title thus tainted.—*Cap. City Ins. Co. v. Quinn*, 73 Ala. 558; *Wailes v. Couch*, 75 Ala. 134; *McCall v. Rogers*, 77 Ala. 349.

In *Harmon v. Lehman, Durr & Co.*, at the present term, we decided that, when a warehouseman or commission-merchant, in advancing money to a customer, takes a note for the repayment of the money with interest, and an obligation to deliver for storage and sale certain bales of cotton, if there be a reasonable expectation, or just ground for belief, that such obligation to deliver cotton can be complied with, then it is a legitimate transaction, and is not usurious. On the other hand, if there be no reasonable expectation, or just ground for believing, that the stipulated quantity of

cotton can be delivered, an agreement to pay, as liquidated damages, a sum equal to the charges for storing and selling cotton of like quantity to that stipulated to be delivered, but not delivered, is usurious.

In the present case, if the testimony of Smith and Beard be true, Beard, of Beard, Wright & Hamil, merchants, conducted the entire negotiations with Lehman, Durr & Co., which led them to make the advance to Smith. The latter was never brought into communication with Lehman, Durr & Co., and hence made no representations as to his ability to deliver the cotton. If representations were, or were not made by Beard, Smith, according to their testimony, did not, and could not have personal knowledge of it. Three witnesses were examined who had the means of knowing what representations were made; Beard, on the part of Smith, and one member of the firm of Lehman, Durr & Co., together with their managing agent or clerk, in their behalf. It is not controverted, but is conceded, that Smith's plantation and farming appliances were not sufficiently extensive to justify a reasonable expectation, or even a belief, that he could produce and deliver therefrom as much as one hundred and fifty bales of cotton, the quantity he bound himself to deliver. Beard was not examined as to what representations he made, or did not make, in reference to the delivery of the one hundred and fifty bales of cotton. The witnesses for appellees give testimony tending to show that Beard, Wright & Hamil were able to deliver, and agreed to deliver for storage and sale, cotton enough to make up the deficiency in Smith's delivery; and that this representation was made before Lehman, Durr & Co. agreed to advance the money; in fact, that it was one of the conditions on which they agreed to advance, and did advance the money. True, this testimony is not as direct and emphatic as it might be, and some portion of it was illegal in form, if it had been objected to. No objections or exceptions are found in the record. The following question to Smith, and answer by him, tend to show there must have been some agreement, or representation, in regard to delivery of cotton by Beard, Wright & Hamil, under Smith's contract: Q. "Did they [Beard, Wright & Hamil] not agree to aid and assist you in delivering the cotton stipulated in the mortgage to be delivered?" . . . . "Did not said Beard, Wright & Hamil again agree to assist you in delivering the number of bales of cotton required to be delivered by the mortgage?" *Ans.* "I

[Smith v. Lehman, Durr & Co.]

do not think they did agree distinctly. They said that, if they had more than was necessary for their own use, they would let me have the advantage of the shipment of it. . . . . Beard, Wright & Hamil did not make such agreement, only as above stated."

As we have said above, the testimony of the witnesses for appellees tends to show that Beard, Wright & Hamil, as a condition on which the money was obtained, agreed to deliver for Smith whatever number of bales of cotton might be necessary to comply fully with his contract; and their testimony stands practically uncontroverted. Smith's contract, the execution of which is not denied, bound him to deliver the agreed number of bales of cotton. We have shown that a warehouseman or commission-merchant, in making advances to a customer, may, in addition to the payment of lawful interest, exact from him an obligation to deliver cotton for storage and sale; and, in certain conditions, such obligation to deliver is neither usurious, nor otherwise illegal. From these premises, the legal conclusion is irresistible, that the burden was and is on Mrs. Smith to show that, in making this contract, there was no reasonable expectation, or just ground for belief, that Smith could comply with this term of his contract. In other words, when parties enter into a contract which, on its face, contains no stipulation which is, *per se*, or *prima facie* illegal, and only becomes so by the existence of certain extrinsic facts, the court must, in the absence of extrinsic proof, pronounce the contract legal, *ut res magis valeat, quam pereat.* The burden of making the extrinsic proof must rest on him who assails the validity of such contract.

Usury is a defense, and must be satisfactorily proved, when set up.—2 Brick. Dig. 128, § 122; *Munter v. Linn*, 61 Ala. 492; *Thomas v. Murray*, 32 N. Y. 605; *L. I. Bank v. Boynton*, 105 N. Y.656; *Popleton v. Nelson*, 12 Or. 349; *Rowland v. Rowland*, 40 N. J. Eq. 281. The question of reasonable ground for believing whether the cotton could be delivered, was and is important in this case, only as it sheds light on the inquiry of usury in the transaction. The proof in support of this feature of the case is insufficient.

By the terms of the contract which Stephen L. Smith made with Lehman, Durr & Co., he was to pay them interest on the money received, was also to deliver them, for storage and sale, one hundred and fifty bales of cotton, and

was to pay customary charges of fifty cents per bale for storage for one month, whether the cotton was delivered or not. This, as was shown in *Harmon v. Lehman, Durr & Co.*, was permissible, when there was a reasonable expectation that the cotton could be delivered. But the contract contained a further stipulation, that upon all the one hundred and fifty bales of cotton, whether delivered or not, Lehman, Durr & Co. were to be paid commissions of two and a half per cent. At the average price at which cotton was then selling, this would amount to $1 12-100 to $1 25-100 per bale, while the price for selling, when no money had been advanced, was universally fifty cents per bale. This was shown by all the testimony, without conflict. To the extent the commissions for selling were increased in consequence of the money advanced, the contract was usurious, under the decision in *Harmon v. Lehman, Durr & Co.* This, under the authorities cited above, takes away from Lehman, Durr & Co. the vantage-ground, or defense of *bona fide* purchase, and opens the transaction to the assertion of Mrs. Smith's equity, if sufficiently proved.

The question then arises, has Mrs. Smith shown an equity as against her husband's half of the land? We feel bound to answer that she has, but not to the full extent of the purchase price. Six hundred and fifty dollars of the deferred installment of the purchase-money was paid from the proceeds of crops, and she can assert no lien on this account. The remaining three hundred and fifty dollars was obtained from a sale of a part of the land, in which he had title and claim to one half. He is indebted to her on account of the land purchase seven hundred and thirteen 51-100 dollars, for which sum, without interest, she is entitled to a paramount lien on her husband's half of the land.

The decree of the chancellor is reversed, and it is ordered that the husband's half of the land be resold, and out of the proceeds the complainant be paid, first, seven hundred and thirteen 51-100 dollars; and the balance will be paid to Lehman, Durr & Co., until they are paid any balance due from Stephen L. Smith to them under the mortgage. The sale to Lehman Brothers is set aside and vacated. All other necessary orders will be made by the chancellor.

Reversed and rendered.