## MILLS v. VIRGINIA–CAROLINA LUMBER CO.

(Circuit Court of Appeals. Fourth Circuit. July 24, 1908.)

### No. 734.

1. BANKRUPTCY — PREFERENCE — DELIVERY OF PROPERTY UNDER CONTRACT OF SALE.

Where a bankrupt, who operated a lumber mill, made a contract for the sale of the entire output of his mill and secured from the purchaser advance payments thereon, the purchaser, by insisting on and obtaining delivery of sufficient lumber which was then on hand to cover the advances within four months prior to the bankruptcy and when the seller was insolvent, did not thereby secure a preference as a creditor which it was required to surrender before proving a secured debt against the estate.

2. SAME—SECURED CREDITOR—LIABILITY FOR GENERAL COSTS.

A mortgage creditor of a bankrupt, who proves his claim solely for the purpose of enforcing his lien on the proceeds of the mortgaged property, which has been sold by the trustee, does not thereby become liable for his proportionate share of the costs of the general administration of the estate.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 882.]

Appeal from the District Court of the United States for the Eastern District of North Carolina, at Raleigh, in Bankruptcy.

Addison L. Holladay (R. N. Simms, on the brief), for appellant.

James H. Pou and G. E. Caskie (Caskie & Coleman, on the brief), for appellee.

Before PRITCHARD, Circuit Judge, and WADDILL and BOYD, District Judges.

BOYD, District Judge. This is an appeal from an order of the District Court of the United States for the Eastern District of North Carolina, sitting in bankruptcy, made in the matter of J. R. Franklin, bankrupt, allowing the Virginia-Carolina Lumber Company to prove a debt against the estate of the said bankrupt amounting to the sum of $750 and interest, the payment of which said debt was secured by deed in trust executed by Franklin to the said Virginia-Carolina Lumber Company within four months preceding the adjudication in bankruptcy. John A. Mills, the trustee of the bankrupt, filed objections to the proof of this debt on the ground that shortly before the adjudication in bankruptcy the Virginia-Carolina Lumber Company had received a preference in the distribution of the bankrupt's estate by taking into its possession $1,000 worth of lumber, property of the bankrupt, and applying it to the payment of another debt which the said lumber company held, or claimed to hold, against Franklin.

The facts, in substance, are these: J. R. Franklin was a manufacturer of lumber, engaged in operating a planing mill in the Eastern district of North Carolina. On the 4th day of January, 1905, Franklin borrowed from the Virginia-Carolina Lumber Company, of Lynchburg, Va., $750 in cash and executed therefor two notes, each for $375, and each bearing that date, the one payable at four months and the other at six months, and at the time of the said loan the said Franklin executed to one Henry M. Sackett, as trustee, a deed in trust conveying certain of his property to secure the payment of the two said notes. On the 8th day of February, 1905, following the date of the loan, the said lumber company and the said Franklin entered into an agreement by which the former agreed to purchase from the latter and the latter agreed to sell to the former the entire output of Franklin's planing mill at certain prices, which were set forth in the agreement and which was in writing; the lumber to be delivered free on board cars at Chalybeat Springs, N. C., where the planing mill was located. The terms of payment for the lumber under this agreement were that the lumber company was to pay 80 per cent. on each shipment, upon receipt of the invoice therefor accompanied by bill of lading, and the remaining 20 per cent., less 2 per cent. discount on the entire bill for cash, when the shipment was received and accepted by the purchaser. During the month of February following the contract of purchase the lumber company advanced thereon to Franklin various sums of money, amounting in the aggregate to $950. This amount was advanced on open account under the contract for the output of the mill, and the lumber company held no security therefor. Franklin filed his voluntary petition and was adjudged bankrupt upon the 10th of March, 1905, and a few days prior thereto the president and another officer of the lumber company called upon Franklin and discussed with him the status of his business and his financial affairs. At this time Franklin stated to them that he was insolvent. Thereupon the lumber company, through these officers, demanded of Franklin the delivery to the company of about $1,000 worth of lumber, then upon the millyard, which had been manufactured by the planing mill, and which Franklin, after some hesitation, delivered to them. After this, on the 21st of September, 1905, the lumber company filed with the

referee its proof of debt of the $750 hereinbefore referred to, together with the deed in trust upon the property of Franklin, executed as security therefor. The trustee in bankruptcy objected to the proof of this claim, and an allowance therefor in the distribution of the estate of the bankrupt, on the ground that within a few days before the adjudication the said lumber company had obtained from Franklin a transfer of $1,000 worth of lumber, and had seized and taken away the said lumber belonging to Franklin, in order to enable the said lumber company to obtain a greater percentage of its debt against said Franklin than other creditors of the same class would obtain. It may be further stated that in the meantime the trustee of Franklin's estate in bankruptcy had proceeded, without notice to Sackett, the trustee, or to the lumber company, the cestui que trust, and had sold the property conveyed in the trust, which brought something over $700; the proceeds being still in the hands of the trustee.

The order of the bankrupt court was to the effect that by reason of the taking of the $1,000 worth of lumber, under the circumstances detailed, the lumber company had not secured a preference in the distribution of the bankrupt's estate, such as contemplated by the bankruptcy law, that would have the effect to defeat the right of the company to prove its $750 debt for money loaned and to assert its right to the proceeds of the property which had been conveyed in the deed in trust as security for the payment of said loan. We are of the opinion that there was no error in this ruling. The $750 debt was for a present loan, and the mortgage upon the property of Franklin, who was afterwards adjudged bankrupt, was given at the time of the loan to secure its payment. It is therefore not affected by the adjudication within the four months from the date of the transaction. In fact, there is no controversy, so far as this record shows, about that proposition, the sole question being that raised by the trustee in his objection to the proof of the $750 debt against the estate of the bankrupt; the objection being that by reason of an alleged preference secured as to another debt by taking the $1,000 worth of lumber a few days before the adjudication the lumber company had deprived itself of the right to prove the $750 debt. In our opinion, the transaction in which the lumber was taken does not constitute an advantage in the distribution of the bankrupt's estate, such as to create a preference under the bankruptcy laws.

There was no suggestion that the contract made between the lumber company and Franklin for the purchase of the entire output of Franklin's mill was not a fair one, and one that the law would enforce. The contract was still existing at the time of the adjudication, and whatever lumber was on hand as the product of the mill the lumber company had a right to claim, provided it complied with the terms which had been agreed upon. If there had been no payment upon the contract of purchase in advance, the lumber company would have been entitled to require the trustee to surrender to it the lumber produced at the mill, provided it complied with the terms of purchase. Having advanced money upon the contract of purchase, the lumber company thereby became entitled to at least as much of the product of the mill as it had paid for, and it could have recovered so much from the trus-

tee, even after the bankruptcy. It is our opinion that, at most, the taking of the $1,000 worth of lumber under a claim by the lumber company that it was entitled to that specific property by virtue of the contract of purchase cannot be construed into a payment upon an existing debt, such as to constitute a preference under the bankruptcy law. If the trustee shall conclude that the $1,000 worth of lumber was wrongfully taken by the lumber company, he has his right of action either to the recovery of the lumber or the value of it, and this right he is entitled to assert in the proper court whenever he elects to do so; our decision only going to the extent of determining that the transaction about the lumber does not operate to estop the lumber company from proving the $750 debt, with the security which had been given therefor.

While we think, therefore, that the judgment of the District Court, allowing the proof of the $750 debt, should be affirmed, we feel constrained to modify the judgment with respect to cost. In the order which was filed by the District Court from the report of the referee, we find the following:

"It is further ordered and adjudged that, as the creditor (meaning the Virginia-Carolina Lumber Company) voluntarily came into court and filed its claim for allowance, said claim must bear its pro rata part of the costs of the administration under the proceedings in bankruptcy."

Aside from the mere costs incident to the proof of the claim, we do not see how this creditor should be required to pay any part of the costs of the administration of this bankrupt's estate. The lumber company had its claim secured by deed in trust on the property of the bankrupt, and it was entitled to have its claim paid in full, provided the property so conveyed would bring enough. The trustee in bankruptcy elected to sell this property and has the proceeds of the sale in hand. The lumber company, in our opinion, is entitled to have of the proceeds of the sale sufficient to pay its debt and interest, provided there is enough. If the property did not bring enough to pay the debt and interest in full, then the lumber company is entitled to have the whole of the proceeds. In other words, this creditor, which has simply come into a bankrupt court and established a debt that is a lien upon specific property of the bankrupt, should not be charged, so as to reduce the security, by making the fund arising from such specific property liable for the costs of the general administration of the bankrupt's estate. With this modification, the judgment of the District Court for the Eastern District of North Carolina, sitting in bankruptcy, is affirmed.

Affirmed.

NOTE.—The following is the opinion of Purnell, District Judge, affirming the opinion of the referee:

PURNELL, District Judge. Claim of the Virginia-Carolina Lumber Company. The allowance of this claim was objected to by the trustee, and after hearing the matter fully the referee finds the following facts, which are certified in due form, to wit:

"(1) J. R. Franklin was duly adjudicated a bankrupt on March 10, 1905, upon the petition filed March 6, 1905.

"(2) On the 4th day of January. 1905, prior to the filing of the petition in bankruptcy, the bankrupt obtained from the Virginia-Carolina Lumber Company a promise to advance the sum of $750 with which to buy a certain tract of timber known as the 'Pearson timber tract,' and in the transaction promised to give the Virginia-Carolina Lumber Company a mortgage upon said timber to secure the said loan. On January 4, 1905, the Virginia-Carolina Lumber Company advanced the money to the bankrupt, and on the same day he executed to the said company two notes, of $375 each, secured by deed of trust of even date, conveying to the said Virginia-Carolina Lumber Company the identical timber rights for which the purchase money had been advanced. Although the bankrupt had signed the deed of trust on January 4, 1905, he did not acknowledge the same until January 14th, 10 days after the signing of the same, and the said deed of trust was not registered in Harnett county until January 16, 1905, 12 days after the same was signed.

"(3) It appears from the evidence, and is found as a fact, that the bankrupt used $400 of the money so advanced by the Virginia-Carolina Lumber Company in paying for said timber rights, and that the balance, $350, the bankrupt put to his own personal use in his business, but that 10 or 15 days after the receipt of the money from the Virginia-Carolina Lumber Company the bankrupt paid the balance due on the said timber rights to the vendors, J. D. and W. M. Pearson.

"(4) The timber rights described in the deed of trust to the Virginia-Carolina Lumber Company and as set out in its proof of claim, is the identical tract of timber which the said lumber company advanced the money to the bankrupt to buy, and said timber rights, under the adjudication in bankruptcy, passed into the possession of the trustee of bankrupt, and was sold by him, and the proceeds arising from said sale are now in the possession of the said trustee, subject to the orders of court, under the proof of claim filed thereto.

"(5) During the month of February following the execution of the deed of trust in January, the bankrupt entered into a contract with the Virginia-Carolina Lumber Company to sell to the said lumber company the entire output of his sawmill, which contract is filed as an exhibit in this proceeding, and upon this contract the bankrupt obtained during the month of February from the Virginia-Carolina Lumber Company advances in money amounting to $950. The amount so advanced was advanced on open account under the contract for the output of the mill, and the Virginia-Carolina Lumber Company held no security therefor. Within a week before the bankrupt filed his petition in bankruptcy the president and another officer of the Virginia-Carolina Lumber Company came to the city of Raleigh, as appears from the evidence, and discussed the status of the bankrupt's business with him fully. At that time the bankrupt was insolvent, and was aware of this fact, and so informed the said officers of the Virginia-Carolina Lumber Company. He further swears, as appears in the evidence, that he told the said officers of the company that his creditors were pressing him and that he must have money, or he would have to suspend operation of his sawmill plant. Thereupon the said officers of the said Virginia-Carolina Lumber Company refused to advance to said bankrupt any more money and demanded that he surrender to them the lumber he had on hand, and the bankrupt swears that upon his hesitating to do so said officers of the lumber company threatened him, and by such threats obtained from him his consent to the removal of a large quantity of lumber, then in possession of the said bankrupt, at Chalybeate Springs, N. C. After obtaining the consent from the bankrupt, the said Virginia-Carolina Lumber Company thereupon seized and took possession of and carried away and converted to its own use a large amount of lumber, of the value of about $1,000, belonging to the said bankrupt, and that in so doing the said Virginia-Carolina Lumber Company obtained a greater percentage of its claim against said J. R. Franklin than the other creditors of the same class; that at the time this preference was obtained upon the unsecured claim against the bankrupt the said Virginia-Carolina Lumber Company not only had reasonable cause to know, but did know, as appears from the evidence, that Franklin was insolvent, and that the said transfer and seizure of said lumber were made in contemplation of the bankruptcy of the said Franklin, and the transfer of the said lumber to the Virginia-Carolina Lumber Company was done, and in fact

it appears from the evidence it was done, in fraud of the other creditors of said bankrupt, other than the said Virginia-Carolina Lumber Company, and that the said transfer of the property by the bankrupt to the said Virginia-Carolina Lumber Company was under duress of the threats made to the bankrupt by the said Virginia-Carolina Lumber Company; that said property was seized and obtained by the Virginia-Carolina Lumber Company within four months of the filing of the petition in bankruptcy—in fact, within one week prior to the filing by the bankrupt of his petition in bankruptcy; that after said property had been so seized and carried away by the said Virginia-Carolina Lumber Company and converted to its own use said Franklin repeatedly demanded statements from them as to the amount of the said lumber carried away, but said Virginia-Carolina Lumber Company refused to furnish same; that similar demands were made upon them by the trustee in bankruptcy after his appointment, and these demands were also refused. Said Virginia-Carolina Lumber Company has filed no proof of claim upon this transaction with the bankrupt, and has not surrendered or made any account or payment to the trustee in bankruptcy on account of the said lumber transferred to and seized by it from the bankrupt, to the value of about $1,000.

"(6) The said Virginia-Carolina Lumber Company has voluntarily come into this court and proven its claim for the $750 and interest, the same being money advanced for the purchase of the Pearson timber tract, claiming its right to receive the proceeds of the sale of this tract by the trustee in bankruptcy.

"From the foregoing facts the referee is of the opinion that the secured claim of the Virginia-Carolina Lumber Company should be allowed, and the same is allowed; and it is adjudged that the said creditor is entitled to be paid the sum of $750 and interest on said claim from January 4, 1905, until paid, out of the proceeds of the sale, now in the hands of the trustee, arising from the sale of the securities mentioned in the deed of trust, provided the amount realized from the sale of said securities is sufficient to meet the principal and interest. It is further ordered and adjudged that, as the creditor voluntarily came into court and filed its claim for allowance, the said claim must bear its pro rata part of the cost of administration under the proceedings in bankruptcy. The referee is of the further opinion that the transaction under the deed of trust and under the contract for the purchase of the output of the bankrupt's sawmill plant are two separate and distinct transactions; the one under the deed of trust being a security given for a present consideration, and the other being wherein money was advanced on open account to the bankrupt under a contract to purchase the output of the mill, no security being given.

"In considering the rights of the creditor, to wit, the Virginia-Carolina Lumber Company, the referee is of the opinion that the validity of its secured claim cannot be attacked for invalidity on account of the fraudulent preference, which was knowingly obtained by the said creditor in trying to make itself secure against loss on its unsecured claim, which was for money advanced under the contract for the purchase of the output of the sawmill. The two transactions are separate and distinct. If the creditor should attempt to prove its claim for the money advanced under the contract, it could not be allowed until it should surrender to the trustee the preferential payment, to wit, the value of the lumber, which it knowingly and fraudulently obtained as a payment from the bankrupt on the very eve of the filing of the petition in bankruptcy. The referee is of the opinion that the proper course to be pursued by the trustee in obtaining from the Virginia-Carolina Lumber Company the preferential payment made to it by the bankrupt as herein stated would be by suit entered against the said lumber company in the District Court of Virginia."

The report of the referee, the cleverness with which he finds the facts and states his conclusions of law, is highly commendable. While he does not pretend to cite all the decisions upon which his conclusions are based, he does cite ample to show such conclusions are sound, and his decision on this claim is in all respects affirmed.

The second debt was contracted for the purchase of the property set aside and appropriated under the mortgage for the payment thereof. This class of

debts is of a high order, and under the state Constitution (article 10, § 2), exempting from sale under execution the homestead of a debtor, it is provided, "But no property shall be exempted from sale for taxes or for payment of obligations contracted for the purchase of said premises," thus providing for what may be termed a constitutional mortgage or lien for purchase money. The debt allowed was purchase money, and the especial property appropriated for the payment of the debt seems to be a proper contract, in compliance with the constitutional provision referred to. The trustee could acquire no better title than the bankrupt had; he succeeds to the bankrupt's title—no more, and no less; and he takes subject to liens good against the bankrupt at the time. This is well settled, and the receipt of a preference on a separate and distinct transaction could not divest a creditor of his vested rights to the property or the proceeds thereof.

Exceptions to the allowance of this claim are overruled, and the report of the referee, both as to findings of fact and conclusions of law, affirmed.