## In re ELMORE COTTON MILLS.

(District Court, S. D. Alabama. October 1, 1914.)

No. 1230.

1. USURY (§ 60*)—WHAT CONSTITUTES—MORTGAGES.

"Usury" is the reserving and taking or contracting to reserve and take, either directly or indirectly, a greater sum for the use of money than the lawful interest. Usury is complete where a direct loan of money made, and more than the legal rate of interest, is secured for the forbearance of payment. Hence, where the legal rate of interest was 8 per cent., and a mortgage stipulated for the payment of interest at that rate, and also bound the mortgagor to pay for recording and the tax required to be paid on the mortgage, in violation of the law requiring the lender or mortgagee to pay the mortgage tax when he has the mortgage recorded, it was usurious.

[Ed. Note.—For other cases, see Usury, Cent. Dig. § 133; Dec. Dig. § 60.*

For other definitions, see Words and Phrases, First and Second Series, Usury.]

2. USURY (§ 1*)—"UNLAWFUL INTEREST."

"Unlawful interest" is a premium or compensation paid or stipulated to be paid for the use of money borrowed beyond the rate of interest established by law.

[Ed. Note.—For other cases, see Usury, Cent. Dig. § 1; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, Second Series, Unlawful Interest.]

3. USURY (§ 126*)—DEFENSE—RIGHT TO URGE.

While usury is a personal defense which can be taken advantage of only by the borrower or his representatives, and not by a stranger, yet where a mortgage debt was usurious, a third party in interest might invoke the rule that the mortgagee was not a bona fide holder, in order that subsequent equities might prevail over it.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 364–416; Dec. Dig. § 126.*]

4. MORTGAGES (§ 116*)—CONSTRUCTION—INDEBTEDNESS SECURED—LOAN TO DIFFERENT PERSONS.

Where a mortgage executed by two individuals who operated a corporation was given to secure their indebtedness of $10,000 to the mortgagee, and provided that if the mortgagors, or either of them, should thereafter become indebted to the mortgagee for money loaned or advances made, the mortgage should stand as security therefor, as if included in the note secured, such mortgage did not secure a subsequent indebtedness of the corporation to the mortgagee as against the holder of a junior mortgage.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 230–232; Dec. Dig. § 116.*]

---

**5.** BANKRUPTCY (§ 474\*)—MORTGAGES—SALE OF MORTGAGED PROPERTY—PRO-
CEEDS—DISTRIBUTION.

Where a bankrupt corporation operated a cotton mill on mortgaged
real estate, and at the instance of general creditors instituted bankruptcy
proceedings, and the mill was operated at a loss by a receiver for a time
without the consent or knowledge of a junior mortgagee, and the mort-
gagees proved their claims in the bankruptcy proceedings solely to en-
force their lien on the proceeds of the mortgaged property, which was
sold by the trustee, and the proceeds obtained were insufficient to pay
the mortgage indebtedness, such proceeds were not subject to deduction
for the loss in operating the mill, nor for any part of the cost or ex-
penses of administering the bankrupt's estate.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 878–884;
Dec. Dig. § 474.\*]

**6.** APPEAL AND ERROR (§ 931\*)—FINDINGS BY REFEREE—PRESUMPTIONS—RE-
VIEW.

While findings of fact by a referee in bankruptcy are presumed to be
correct until the contrary is shown, the weight to be given such findings
by the reviewing judge depends on the character of the evidence, and if
the findings are based on undisputed facts which are set out in the rec-
ord, they are entitled to no presumptions in their favor.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3728,
3762–3771; Dec. Dig. § 931.\*]

**7.** BANKRUPTCY (§ 228\*)—FINDINGS BY REFEREE—HEARING DE NOVO.

Where the evidence before a referee in bankruptcy is not in serious
conflict, the district court, on review, may disregard the referee's find-
ings entirely and proceed de novo to reject them for reasons of law, and
may review the questions presented, though no formal exceptions to the
referee's decision are filed, and though they were not discussed before or
by the referee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 387; Dec.
Dig. § 228.\*]

In Bankruptcy. In the matter of bankruptcy proceedings of the
Elmore Cotton Mills. Petition of Mrs. Marshall E. Chamberlain to
review the findings of the referee allowing the claim of the Robertson
Banking Company, and also findings and order allowing compensation
to L. C. Lowe, as receiver and trustee of the bankrupt's estate. Re-
versed.

See, also, 217 Fed. 808.

George Pegram, of Faunsdale, Ala., for petitioner.
Pettus, Fuller & Lapsley, of Selma, Ala., for Robertson Banking Co.
Henry McDaniel, of Demopolis, Ala., for trustee.

TOULMIN, District Judge. At the hearing of the matters referred
to, and at the time said findings and orders were made, the petitioner
made objections to the same, which objections were overruled by the
referee. Whereupon the petitioner prayed that said findings and orders
may be reviewed, as provided in and by the Bankrupt Law of 1898 (Act
July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1913, § 9585]) and
the general orders in bankruptcy, which was accordingly granted.

For an understanding of the case as I view it, I shall state the sub-
stance of its facts so far as I have learned them from the record be-
fore the court. On June 18, 1913, four general creditors of the bank-

rupt, Elmore Cotton Mills, a corporation, filed an involuntary petition in bankruptcy against the said corporation. At the same time they, by proper petition, prayed the court to appoint a receiver to take charge of the property of the bankrupt, and to preserve the same until a trustee should be appointed. The petitioners also asked that the receiver be authorized to operate the cotton mills, and to carry on the business, etc. For cause shown, deemed sufficient, such authority was given as stated, and in the order of appointment, thus:

"That such receiver shall keep a careful and accurate account of the costs and expenses of operating said mill, and if the same cannot be operated without a loss, he shall at once discontinue operating the same."

L. C. Lowe was appointed receiver on the recommendation of the petitioning creditors. It appears that the said Lowe was subsequently acting trustee. It does not appear from the record by what authority —whether by election of the creditors, or by appointment of the referee, on the failure of the creditors to elect. It does not appear from the evidence in the record when said Lowe ceased to be receiver and assumed the position of trustee. I infer, from circumstances shown by the record, that it was very soon after his appointment as receiver. I, however, find in the record, which purports to be an order of the referee confirming a report of the trustee and allowing him costs and expenses for operating and upkeep of the mill of the bankrupt, and also the allowance of compensation to the trustee, the statement or recital that the claim of said trustee was for operating the mill from June 17, 1913, which is an error in date, doubtless made through mistake, inadvertence, or oversight, as the petition in bankruptcy was not filed until the 18th of June, 1913, and the receiver not appointed until that day; and I doubt that he took charge and control of the property on that day. But in my view of the case it is not worth while to discuss the receiver Lowe's connection with the case and the length of time that he acted as such receiver. Mrs. Chamberlain, the petitioner, had no connection with the case at that time, and had no part or interest in the appointment of the receiver.

The court had, at the time of said appointment, no knowledge of any mortgages on the property mentioned in the order of appointment. It was presumed to have been made, and was made, in the interest of and for the benefit of the general creditors. It appears from the record that on March 17, 1911, Benj. F. Elmore and wife, and Mary E. Anderson and husband, made a mortgage to the Robertson Banking Company to secure the payment of a note for $10,000, with interest at 8 per cent. per annum from date, payable January 1, 1912, on certain real estate described therein, a part of which was the land on which the Elmore Cotton Mills were situated, with certain personal property described in said mortgage, as machinery (a boiler, engines, etc.) appertaining to said cotton mills. Said mortgage contains, among others, the following stipulations, covenants, and agreements:

"That said parties of the first part will pay for preparing and recording this mortgage, and the privilege tax required by law to be paid thereon, and if they fail to do so, said party of the second part may, at its option, pay the same, and all sums so paid shall be secured by this mortgage, draw interest from date of payment, and be due January 1, 1912."

"That if said Benj. F. Elmore and Mary E. Anderson, of the first part, or either of them, should hereafter become indebted to said party of the second part, for money loaned, advances made, or by account, note, overdraft or otherwise, before the note above mentioned is paid in full, then, and in any of said events, this mortgage shall stand as security therefor, the same, in all respects, as if included in said note."

This mortgage was recorded on March 23, 1911.

The record also shows that on March 17, 1911, Benj. F. Elmore and wife and Mary E. Anderson and husband executed and delivered to Marshall E. Chamberlain a mortgage on certain real and personal property therein described, being the same property covered and described in the aforesaid mortgage to Robertson Banking Company, except that part of said property described in Robertson Banking Company's mortgage as is said to be situated in Montgomery County, Alabama.

The Marshall E. Chamberlain mortgage was made to secure an indebtedness of said mortgagors to her, and evidenced by five promissory notes, of even date with said mortgage, aggregating in amount to $8,670.40. Said mortgage was duly recorded on April 20, 1911. It contains the following statement:

"It is particularly understood and agreed between the parties hereto that this is a second mortgage to a mortgage heretofore given by the said Benj. F. Elmore and wife, Elizabeth Bostic Willett Elmore and Mary Elmore Anderson and D. D. Anderson, her husband, to secure a loan of ten thousand dollars, and is subordinated and subservient to said mortgage of ten thousand dollars."

The said mortgage further declares that:

"The said Elmore and Anderson represent to and covenant with said Marshall Elmore Chamberlain that, except as to a prior mortgage of ten thousand dollars they are seised of an indefeasible estate in fee simple in and to the above described property, and have a right to sell and convey the same. The said property is free from any and all liens and taxes whatsoever."

The first question presented on this review is the allowance of the claim of Robertson Banking Company in full. Said banking company claims the sum of $12,104.88 to be due it on its mortgage, and claims the same to be secured thereby. The referee, after hearing said claim and the objections to the allowance of certain items of said claim filed by the petitioner, Marshall E. Chamberlain, made a total allowance of $11,626.36 to said banking company on the said claim.

First. The petitioner objects to the amount of said claim as allowed because a part of the same consists of interest on the principal amount of money secured by said mortgage, on which said claim is based, shows on its face "that it is a usurious contract, and therefore said banking company has forfeited all legal right to any interest on the principal sum secured by said mortgage."

Second. Petitioner objects to the allowance of the claim of said Robertson Banking Company, as based on said mortgage, of the note of Elmore Cotton Mills and Benj. F. Elmore, dated December 20, 1912, for the sum of $1,127.30 on the grounds that it is not a part of the indebtedness secured by said mortgage; that said note was executed after the maturity of the note for $10,000, and of the mortgage made to

secure said note of $10,000, and that said note of $1,127.30 is not a valid part of the indebtedness secured by the mortgage; that said mortgage shows on its face that it is a usurious contract; that said Banking Company's mortgage *is* a usurious contract, and said banking company not an innocent purchaser of said note, and therefore it has no right to tack the same to the indebtedness secured by said mortgage; that said note of $1,127.30 is not an obligation of the original mortgagors, and therefore it is not a valid part of the indebtedness secured by said mortgage.

[1, 2] The objection that the mortgage of Robertson Banking Company shows on its face that it is a usurious contract is, I think, well made. The stipulation and agreement contained in said mortgage "that the mortgagors would pay for recording the mortgage and the privilege tax required by law to be paid thereon, and if they fail to do so, the mortgagee may pay the same, and the sum so paid shall be secured by the mortgage, draw interest from date of payment and be due January 1, 1912," does, in my opinion, render the contract usurious.

"Usury is the reserving and taking or contracting to reserve and take, either directly or by indirection, a greater sum for the use of money than the lawful interest. Unlawful interest is a premium or compensation paid or stipulated to be paid for the use of money borrowed beyond the rate of interest established by law." Black's Law Dictionary, page 1206.

"Usury is complete where a direct loan of money is made, and more than the legal rate of interest is secured for the forbearance of payment." Ely v. McClung, 4 Porter (Ala.) 128.

The legal rate of interest in this state is 8 per cent. The note executed by Benj. F. Elmore and Mary E. Anderson to Robertson Banking Company for $10,000 stipulates for the payment of interest from date at the rate of 8 per cent. per annum. The mortgage made by said Elmore and Anderson to said banking company, to secure the payment of said note, contains a stipulation, covenant, and agreement that said mortgagors would pay for the recording of said mortgage, and would also pay the tax required by law to be paid on said mortgage. The law provides that the lender, the mortgagee, must pay the mortgage tax at the time he has his mortgage recorded. The borrowers, Elmore and Anderson, covenanted to pay both sums. It is clear that the payment of these sums by the borrowers for the lender is more than the law allows for the use of the money lent, which, with interest at 8 per cent., the borrowers had contracted to pay. Are not these sums paid or stipulated to be paid a premium or compensation for the use of the money borrowed beyond the rate of interest established by law?

It seems to me that this case comes clearly within the principles of the law cited.

"In determining whether a contract is infected with usury, its substance and effect, and not its form, is material. The intent to take or reserve more than lawful interest for a loan of money, or the forbearance of a debt, must exist; and this is deduced from the relations of the parties, their acts contemporaneous with or subsequent to the contract, and all attendant circumstances. When this intent exists, and such is the substance and effect of the contract, no form or covering which may be given it, no device or shift, can sustain it. A simple loan, or the mere forbearance of an existing debt, which, with the

lawful interest, is not put at hazard, but is certainly to be paid, will become usurious by ingrafting upon it stipulations intended for the additional profit of the creditor, and not as compensation for loss or inconvenience he may bear." Uhlfelder & Co. v. Carter's Adm'r, 64 Ala. 532.

[3] While my opinion is that the contract to pay the mortgage tax and the probate judge's fee for recording the mortgage in addition to the 8 per cent. interest on the loan is usurious, the petitioner, the junior mortgagee, cannot avail herself of this fact to the extent of defeating the senior mortgagee's right to interest on the loan of the $10,000, stated and fixed as the consideration of the note and mortgage.

"Usury is a personal defense, and cannot be set up by strangers" to the contract, but only by the parties or their representatives. McGuire v. Van Pelt, 55 Ala. 344.

Usury is a privilege personal to the borrower, and he only can defeat the claim of interest on the loan because of usury in the contract. Fenno et al. v. Sayre, 3 Ala. 458–463. But if the mortgage contract debt is usurious, any third person in interest may invoke the rule that the mortgagee is not a bona fide holder, and latent or secret equities must prevail over it. Smith v. Lehman, Durr & Co., 85 Ala. 394, 5 South. 204; Meyer v. Cook, 85 Ala. 417, 5 South. 147; Hart v. Adler, 109 Ala. 467, 19 South. 894; Uhlfelder v. Carter, 64 Ala. 532, supra.

[4] The objection to the allowance of the claim of Robertson Banking Company on the note of Elmore Cotton Mills and Benj. F. Elmore is on the ground that it is no part of the indebtedness secured by said banking company's mortgage. The objection is good. No such indebtedness is provided for in the mortgage. There is nothing said in the mortgage in reference to the money loaned or advances made to Elmore Cotton Mills.

There is a stipulation in the mortgage that if Benj. F. Elmore and Mary E. Anderson, or either of them, should "hereafter become indebted" to said Banking Company, for money loaned, advances made, etc., the mortgage shall stand as security therefor, the same as if included in said note of $10,000. Even if said stipulation were valid and effective against the petitioner, the second mortgagee of the property sought to be subjected to the claim in question, it is ineffective as to a loan or advance made to Elmore Cotton Mills, if any. Said stipulation is so vague, indefinite, and uncertain that I greatly doubt its enforcement in any proceeding. But it is unnecessary to further discuss this branch of the case here.

"When the debt secured by a mortgage is tainted with usury, the mortgagee cannot claim protection, as a bona fide purchaser, against a secret equity of which he had no notice." Smith v. Lehman, Durr & Co., 85 Ala. 394, 5 South. 204; McCall v. Rogers, 77 Ala. 349.

"Debts contracted by the mortgagor after the execution of the mortgage, or advances subsequently made to him by the mortgagee, cannot be tacked to the mortgage debt * * * to the prejudice of a junior mortgagee." Schiffer v. Feagin, 51 Ala. 335.

"The holder of commercial paper, acquiring it on a usurious consideration, is not a bona fide holder, * * * nor against transactions between the makers * * * with third persons, dealing with them without notice, in good faith, on a valuable consideration." Hart v. Adler, 109 Ala. 467–470, 19 South. 894, 895.

The facts shown by the record are that Benj. F. Elmore and Mary E. Anderson, on March 17, 1911, executed a mortgage to Robertson Banking Company on certain lands to secure the payment of a loan evidenced by a note for $10,000, payable on January 1, 1912, with interest from date at the rate of 8 per cent. per annum. On the same day, March 17, 1911, said Benj. F. Elmore and Mary E. Anderson executed and delivered to Marshall E. Chamberlain a mortgage on said land to secure an indebtedness of said mortgagors to her of $8,670.40, evidenced by promissory notes of even date with the mortgage. This mortgage states that it is a second mortgage to a mortgage heretofore given by the said mortgagors to secure a loan of $10,000, and is subordinated and subservient to said mortgage of $10,000. The mortgagors represented to and covenanted with Marshall E. Chamberlain in the mortgage made to her that the property described therein was free from any and all liens, except as to a prior mortgage of $10,000.

It does not appear from anything in the record that Mrs. Chamberlain had any knowledge or information as to whom said $10,000 mortgage was made, or that it contained a stipulation as to any future loans and advances to the mortgagors that might be made by the mortgagee, Robertson Banking Company. There is no statement in the Chamberlain mortgage of the existence of these facts, and there is no proof in the record before the court that Mrs. Chamberlain, at the time of the execution and delivery of the mortgage to her, had any knowledge or notice that the prior mortgage to Robertson Banking Company contained any agreement or stipulation that said prior mortgage should stand as security for any money loaned or advanced to or paid for said mortgagor, subsequent to the execution of said prior mortgage, except the note for $10,000. The banking company's mortgage was recorded 6 days after its execution, and after the execution of Mrs. Chamberlain's mortgage. The note for $1,127.30 was made December 20, 1912, payable 1 day after date, and being 11 months and 20 days after the note for $10,000 secured by the mortgage, was due. The Chamberlain mortgage was recorded April 20, 1911, 1 year and 8 months prior to the execution of the note for $1,127.30. The three other notes made by the mortgagor, Benj. F. Elmore, to Robertson Banking Company, subsequent to the note for $1,127.30, payment of which is sought out of the proceeds of the sale of the mortgaged property, are subject to same ground of objection as to the allowance of payment of said note of $1,127.30 out of said proceeds. Whether or not they were allowed by the referee the court is not able to say from the record.

The finding and order of the referee in allowing the claim of Robertson Banking Company to the extent of $11,626.36 is, in my judgment, erroneous, and is reversed and annulled. The court has not found from the record before it how the referee arrived at the amount of $11,626.36 allowed by him and awarded to Robertson Banking Company. It finds from that record, all of which is before it, as shown by the referee's certificate of a summary of the evidence that, "By agreement between the parties, only the record is submitted for review"

which includes some oral evidence, therein called written evidence, in contest on the report and compensation of the trustee. When thus submitted it is the court's right and duty to decide the case on that record and determine the respective rights of the parties as, in the judgment of the court, the law and justice require.

Tested by the principles of law announced in this opinion, the court finds that the total amount due the Robertson Banking Company, principal and interest to October 27, 1913, is $9,733.14. This amount is found by allowing the $10,000, with interest, credited by $2,656.62 amount paid on said note, with interest on the balance due on same, and in addition thereto insurance premiums paid by said banking company, with interest, $390.76. Total amount allowed by the court, for which sum a decree will be entered for said Robertson Banking Company, being $9,733.14. A statement of the account of said Robertson Banking Company, as made out under the direction of the court, against the proceeds of the sale of the mortgaged property, is hereto annexed and filed herewith.

It will be observed that all items of Robertson Banking Company's claim against said proceeds, being four certain notes executed subsequent to the execution of the note for $10,000, and the mortgage to secure the same, are excluded and disallowed as a part of said claim.

[5] The second question presented by the referee's certificate is his allowance of the report of the trustee and receiver, and his allowance of their compensation as such. In re Williams, 156 Fed. 939, 84 C. C. A. 434 (C. C. of Appeals, 9th Cir.). The petitioner, Marshall E. Chamberlain, objected to the allowance and order made on said report, which was overruled by the referee. The finding and order approving said report and allowing the same, and the allowance and compensation to the trustee also objected to. Said order is before the court on petition for review. The contention is that the trustee operated the cotton mill at his own risk, and without the knowledge or consent of the petitioner, who held a mortgage on the property, and that he is not lawfully entitled to retain out of the proceeds of the sale of the property, covered by the mortgage, the money alleged to have been lost by him in the operation of the cotton mill. The further contention is that the trustee is not entitled to any compensation out of the proceeds of the sale of the property, inasmuch as such proceeds are insufficient to pay the mortgages thereon. There is no question as to the validity of the mortgages.

"A mortgage creditor of a bankrupt, who proves his claim solely for the purpose of enforcing his lien on the proceeds of the mortgaged property, which has been sold by the trustee, does not thereby become liable for his proportionate share of the cost of the general administration of the estate." Mills v. Virginia Carolina Lumber Co., 164 Fed. 168, 171, 174, 90 C. C. A. 154, 21 L. R. A. (N. S.) 901 (C. C. A. 4th Cir.); In re Williams, supra.

The mortgagee is "entitled to have" his "claim paid in full, provided the property" mortgaged "would bring enough." He "is entitled to have of the proceeds of the sale sufficient to pay" his "debt and interest, provided there is enough. If the property did not bring enough to pay the debt and interest in full then" he "is entitled to have the whole of the proceeds." 164 Fed. 171, 90 C. C. A. 157, 21 L. R. A. (N. S.) 901, supra.

The trustee can acquire no better title or greater right than the bankrupt had; he succeeds to the bankrupt's title—no more, and no less—and he takes subject to liens good against the bankrupt at the time. Mills v. Virginia, Carolina Lumber Co., supra; In re Stewart (D. C.) 193 Fed. 791.

"Expense incurred by a trustee in bankruptcy in caring for real estate which is subject to valid mortgages is presumed to be for, the protection of the supposed interest of general creditors, and unless the mortgagees expressly or by * * * implication assent to such expenditures they cannot, in general, be charged with them." In re Vulcan Foundry & Machine Co., 180 Fed. 671, 103 C. C. A. 637 (C. C. A. 3d Cir.).

In my opinion these contentions are sustained and well settled by the authorities.

In the case of In re Harralson, 179 Fed. 490, 103 C. C. A. 70, 29 L. R. A. (N. S.) 737 (C. C. A. 8th Cir.) is analogous, and so similar, in some of its facts, to the case now before the court that I will state substantially the facts of that case, and quote to some extent from the opinions in the case on those facts. At the time of adjudication of bankruptcy, the Ozark Cooperage & Lumber Company had a valid mortgage upon the sawmill and machinery of the bankrupt, securing an indebtedness of $1,640. Said Ozark Cooperage & Lumber Company proved its claim for the debt before the referee, and the mortgage was adjudged valid and the claim allowed. It was stipulated between the trustee and said company that the property covered by the mortgage might be sold by the trustee under an appropriate order of the referee, and clear of the lien of the mortgage, and the lien transferred to the proceeds of such sale. The referee made the order authorizing the trustee to sell the property, such sale to be subject to approval of the referee. The trustee sold the property. It was bid by the mortgagee for $1,500. The sale was approved by the referee, who entered an order directing that the property be delivered to the purchaser upon the payment of sufficient funds to meet the expenses of the sale and commissions, namely $85. The trustee at first only demanded that the Ozark Cooperage & Lumber Company, the mortgagee, pay him in carrying out its bid $70 for his commissions and $15 for commissions to the referee, making an aggregate of $85. Afterwards the trustee insisted that said company pay him in money $1,500, being the amount of the bid for the property purchased. Said company declined to pay the $1,500, or any other sum in money, but insisted on its right to fulfill its bid by entering a credit of $1,500 upon its secured claim of $1,640 which had been adjudged to be a valid lien upon the proceeds of the property purchased. The referee thereupon made an order directing said company to appear and show cause why it refused to pay said purchase money. The company filed a return to said order in which it set up the grounds for its said refusal, as advised by its counsel. Thereupon the referee made an order directing the said company to pay the trustee the said sum of $1,500. On the petition of said company duly filed this order was certified to the District Court for review. Judge of the court said: "Under the facts here

presented, I am of opinion that the referee's order was erroneous, and it should be set aside." The judge further said:

"There appears to have been other property out of the proceeds of which the costs and expenses of the bankruptcy proceeding could be met; but, whether this was the case or not, the secured creditor was entitled to the entire proceeds of the property upon which it had a lien until its debt was fully satisfied, and no part of such proceeds could be properly withheld from it to pay commissions of the trustee and referee or other costs of the bankruptcy administration."

This case was taken to the Circuit Court of Appeals, Eighth Circuit, by the trustee on petition for review of the order of the District Court. The petition for review was denied, and thereby the order of the District Court, vacating and setting aside the order of the referee, stood affirmed. In re Harralson, 179 Fed. 490–493, 103 C. C. A. 70, 29 L. R. A. (N. S.) 737 (C. C. A., 8th Cir.).

The case before this court is a stronger case for the mortgagee than th Harralson Case. In that case the claimant was a creditor of the bankrupt, and its claim was secured by mortgage executed by the bankrupt. In this case the claimant is not a creditor of the bankrupt, except in the sense and contemplation of the Bankrupt Act as "one who owns a demand or claim provable in bankruptcy." Collier on Bankruptcy, pp. 1–7.

The Chamberlain mortgage was not made by the bankrupt, and the proceeds of the sale of the property covered by the mortgage is insufficient to pay the debt secured by it, yet the mortgagee has no claim as a creditor against the bankrupt estate for the deficiency. The bankrupt estate is not liable for it, on the facts presented in the record.

[6] The weight to be given to a finding by a referee in bankruptcy, on review by the judge, depends on the character of the evidence; it being entitled to less weight, if a deduction from established facts. The judge, having the same facts, may as well draw inferences or deduce a conclusion as the referee. In re McCrary Bros. (D. C.) 169 Fed. 485; Ohio Valley Bank Co. v. Mack, 163 Fed. 155, 89 C. C. A. 605, 24 L. R. A. (N. S.) 184.

The findings of fact by the referee are presumed to be correct until the contrary is shown. But findings based on undisputed facts which are set out in the record are entitled to no presumptions in their favor. In re Williams (D. C.) 120 Fed. 542; In re Swift (D. C.) 114 Fed. 947.

[7] And where the evidence is not in serious conflict the court is not bound by the conclusion of the referee. Authorities supra; In re People's Department Store Co. (D. C.) 20 Am. Bankr. Rep. 244, 159 Fed. 286, the court may disregard the findings of the referee entirely, and proceed de novo to reject them for reasons of law; and they may be reviewed although no formal exceptions to the referee's decision are filed. If any point is presented by the record, then before it, the court may consider it although it was not discussed before or by the referee. In re Miner (D. C.) 117 Fed. 953, 9 Am. Bankr. Rep. 100; In re Samuel Wilde's Sons, 16 Am. Bankr. Rep. 386, 144 Fed. 972, 75 C. C. A. 601; In re People's Department Store Co. (D. C.) 20 Am. Bankr. Rep. 244, 159 Fed. 286; In re Samuel Wilde's Sons, 144 Fed.

972, 75 C. C. A. 601; In re Wood (D. C.) 2 Am. Bankr. Rep. 695, 95 Fed. 946.

The facts disclosed by the evidence in this case relating to the claims of the Robertson Banking Company and of Marshall E. Chamberlain are undisputed. There is no conflict in the evidence as to them.

It appears from the record that Marshall E. Chamberlain proved her claim, under her mortgage, before the referee, the validity and correctness of which claim does not appear from the record to have been disputed or questioned, but it does not appear from the record that the referee found what amount was due her, and what amount she might be entitled to thereon to be paid out of the proceeds of the sale of the mortgage property.

The referee finds that the aggregate of the secured claims was more than the proceeds of the sale, and he ordered that out of the proceeds, after the amounts of compensation for the trustee, all other lawful and proper costs of administration, taxes due, and unpaid have been deducted, the trustee will pay the claims of Davis & Furber Machine Company and Robertson Banking Company, and if a balance then remained, it should be applied to the claim of Marshall E. Chamberlain. The claim of Davis & Furber Machine Company was $1,756.59 and the claim of Robertson Banking Company allowed by the referee, $11,626.36, and the tax claim of $380.75 amount, in the aggregate, to $13,763.70, deducted from $17,000, the proceeds of the sale of the mortgaged property, there remains $3,236.30. As it does not appear from the record how this sum of $3,236.30 was specifically appropriated or set apart, and as it does not appear that any specific amount was found due Mrs. Marshall E. Chamberlain, it is presumed that said sum of $3,236.30 was appropriated or set apart as the compensation for the trustee and cost of administration, etc., as ordered by the referee.

As the court cannot agree with the referee in his said finding and order, it proceeds de novo to state the account. It finds from the undisputed facts, shown by the record, that the amount due Robertson Banking Company, as a balance on its claim, principal, and interest, $9,733.14, for taxes, $380.75, adding thereto the amount admitted and agreed by the mortgagees to be paid Davis & Furber Machine Company, $1,756.59, makes a total of $11,870.48; deducted from $17,000, proceeds of the sale of the mortgaged property, leaves a balance of $5,129.52 to be applied to the mortgage claim of Marshall E. Chamberlain, and which claim the court finds to be due her, $9,891.15, principal, and interest.

On the facts presented, I am of opinion that the referee's orders in the case are erroneous, and should be vacated and set aside; and it is so ordered.

Some of the facts of the case have been neither presented nor found with sufficient definiteness to enable the court, with any degree of satisfaction, to pass upon the question of compensation to the trustee, and commissions, costs, etc., as allowed, and which have arisen in the case. There is an indefiniteness as to the facts on which the claim

was based and allowed, and on what data, "which makes the case unnecessarily cloudy." Quoting from the opinion of the court in Re Hawley Down Draft Furnace Co., in (D. C.) 214 Fed. 501:

"The mind which looks them over returns from the survey with * * * much the feeling of Noah's dove. There is no place upon which to plant your feet."

Amount due Robertson Banking Company:

| | | |
|---|---|---|
| Face of note of March 17, 1911 | $10,000 | 00 |
| Interest on above note to November 22, 1912 | 1,344 | 44 |
| | | |
| Amount due on note November 22, 1912 | $11,344 | 44 |
| Less cash payments of November 10 and 22, 1912 | 2,656 | 62 |
| | | |
| Balance | $ 8,687 | 82 |
| Interest on balance to October 27, 1913 | 654 | 47 |
| | | |
| Amount due on note October 27, 1913 | $ 9,342 | 29 |
| Insurance premiums paid by Robertson Banking Company as per statement dated August 15, 1913 | $378 | 58 |
| Interest on premiums paid by Robertson Banking Company from date of payment to October 27, 1913 | 12 | 27 |
| | | |
| Total | $390 | 85 |
| Amount due on note October 27, 1913 | $9,342 | 29 |
| Total amount due for insurance | 390 | 85 |
| | | |
| Total amount due Robertson Banking Company | $9,733 | 14 |

Memorandum of amount due Mrs. Marshall E. Chamberlain:

| | | |
|---|---|---|
| Principal | $8,670 | 40 |
| Interest from maturity of notes to October 27, 1913 | 1,220 | 75 |
| | | |
| Total amount due Mrs. Chamberlain October 27, 1913 | $9,891 | 15 |

From January 1, 1912 (the date when the first note became due under the stipulations of the mortgage) to October 27, 1913 (the date of the sale of the mortgage property) was 1 year 9 months and 26 days. From January 31, 1912 (the date when the other notes became due) to October 27, 1913, was 1 year 8 months and 27 days. The interest was figured at 8 per cent.