## THE REAL ESTATE TRUSTEE, INCORPORATED, *v.* WILLIAM LENTZ ET AL., TRUSTEES.

*Sale Under Mortgage—Claim to Surplus Proceeds—Deficit on Other Mortgage—Usury—Service Charges.*

One having a judgment for a deficit on a mortgage sale cannot assert, on the theory of set-off, as against assignees for creditors of the debtor, and by reason of the latter's insolvency, a claim to the surplus proceeds of sale under another mortgage, also made by the debtor to the judgment creditor, which are in the hands of the trustee judicially appointed to make the latter sale.                                          pp. 627, 628

The question of usury in the commissions charged on a loan secured by mortgage is immaterial if such commissions are less than the amount due on another loan made by the mortgagee to the mortgagor, which the mortgagee is entitled to have charged against the surplus proceeds of sale under the mortgage.     p. 627

A service charge, so called, of a certain percentage of the amount loaned, in addition to interest at the rate of six per cent., was usurious, when the lender rendered no service to the borrower except the making of the loan and the application of its

proceeds to the payment of liens on the property given as secur-
ity, the lender's inspection of the property before making the
loan, and his inspection thereof after the loan to ascertain
whether certain covenants were being complied with, being for
his own and not the borrower's benefit.            pp. 628-630

*Decided November 4th, 1927.*

Appeal from the Circuit Court of Baltimore City
(FRANK, J.).

Proceeding by the Real Estate Trustee, Incorporated,
mortgagee, against George W. Rebhan and Agnes B. Rebhan,
his wife, mortgagors, for the sale of property under foreclos-
ure of mortgage.  From a decree determining the amount
to be allowed said mortgagee from the proceeds of sale, and
ordering that the balance of said proceeds, in the hands of
Milton Roberts, trustee in the foreclosure proceeding, be
paid over to William Lentz and Joseph Sherbow, trustees
for the benefit of the creditors of said mortgagors, the mort-
gagee appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON,
URNER, ADKINS, OFFUTT, DIGGES, and SLOAN, JJ.

*Arthur L. Jackson,* for the appellant.

*Roland R. Marchant* and *Joseph Sherbow,* with whom
was *Enos Stockbridge* on the brief, for the trustees, appellees.

URNER, J., delivered the opinion of the Court.
The foreclosure of a mortgage for $35,000 held by the
appellant corporation resulted in a sale of the mortgaged
real estate for a sum sufficient to pay the costs and expenses
of the proceeding and to provide a surplus of $1,313.46,
which is claimed by trustees for the benefit of the mort-
gagors' creditors, who also claim that the surplus should be
augmented by the sum of $1,750, because of the retention of
that amount by the mortgagee, out of the mortgage loan, as

commissions which are alleged to be usurious. The mort-
gagee denies the charge of usury and the right of the mort-
gagors' trustees to the surplus proceeds of the mortgage sale,
and asserts that the surplus is properly applicable to a defi-
ciency resulting from the foreclosure of its mortgage on other
property securing a separate loan of $25,000 to the same
mortgagors. From these conflicting claims arise the ques-
tions to be determined on this appeal.

Both mortgage sales were made by a trustee appointed
by consent decrees. The proceeding for the sale under the
$35,000 mortgage was begun on January 28th, 1926, and
the sale occurred on May 3rd of that year. Meanwhile the
mortgagors executed a deed of trust for the benefit of their
creditors. The report of the sale under the mortgage just
mentioned was finally ratified on June 8th, 1926. Later in
the same month the sale under the other mortgage was made
in the course of proceedings instituted on May 11th. That
sale was ratified on the 26th of July. Upon the petition
of the trustees for the benefit of the mortgagors' creditors,
and with the assent of the trustee who had made the sale
under the $35,000 mortgage, the court below passed an order
in that proceeding, on June 30th, 1926, directing that any
surplus proceeds of the sale, after the payment of the mort-
gage claim, costs and commissions, be paid to the mortgagors'
trustees. A few days later an auditor's account was filed,
showing the surplus of $1,313.46 already referred to, and
the trustees of the mortgagors excepted to the ratification of
the account on the ground that the mortgagors, because of
the alleged usurious retention of commissions, did not receive
the full amount claimed to have been loaned by the mort-
gagee. Subsequently the mortgagors' trustees petitioned the
court to require the trustee who made the sale to pay the
ascertained surplus to the petitioners, as provided by the
order previously passed. In his answer to that petition the
trustee under the mortgage explained his refusal to make
the payment by the statement that the mortgagee has a claim
for a deficit in the other foreclosure proceeding between the
same parties, on account of which the mortgagee had obtained

a personal judgment against the mortgagors for the sum of
$3,470.05. The answer of the trustee, who was the same
appointee in both proceedings, was followed by a petition
of the mortgagee requesting that the surplus proceeds of sale
in the earlier proceeding be paid to it in partial satisfaction
of its judgment for the deficiency resulting from the sale
in the later proceeding for the collection of its other mort-
gage. At the hearing on the question thus raised by excep-
tions and petition, the court received testimony as to the fact
and purpose of the deduction by the mortgagee of five per
cent. commissions, amounting to $1,750, from the loan
secured by the $35,000 mortgage, and there was introduced
the record of the separate foreclosure proceeding in which
the deficiency resulted. The conclusion of the court was ex-
pressed in a decree which directed that the sum of $1,750 be
deducted from the amount allowed to the mortgagee by the
auditor and be added to the surplus, which, as thus increased,
was ordered to be paid to the trustees for the benefit of cred-
itors to whom the estate of the mortgagors had been con-
veyed. From that decree the mortgagee has appealed.

While the separately secured $25,000 mortgage loan was
also subjected by the mortgagee to a five per cent. commis-
sion, no exceptions were filed to the audit allowing the full
amount of the loan in the proceeding for the sale under that
mortgage, because the retained commission was much less
than the amount of the deficiency which the sale produced.
That deficit in fact exceeds the total of the commissions de-
ducted from both mortgage loans, and if the mortgagee is
entitled to have his deficiency judgment in the second fore-
closure case charged against the proceeds of the sale in the
first proceeding, the question of usury in that case would
likewise be immaterial. *Kinsey v. ·Drury,* 146 Md. 227.

To support its asserted right of set-off, the appellant cited
cases in which judgment debtors have been allowed in equity
to avail themselves of their counter-claims against the judg-
ment creditors, who were proved to be insolvent. *Marshall
v. Cooper,* 43 Md. 46; *Dubreuil v. Gaither,* 98 Md. 541.
But in this case a judgment creditor is claiming, as against

the assignees of the judgment debtors for the benefit of their creditors, a fund in the custody of a judicially appointed trustee. The judgment creditor has acquired no lien on the fund so held, and while the insolvency of the mortgagors is admitted, the other conditions are not such as to admit of the exercise of a right to set off the judgment against the assignees' claim to the fund.

The five per cent. commission retained by the mortgagee out of the $35,000 mortgage was in addition to the six per cent. interest for which the mortgage stipulated. The president of the lending corporation testified that the commission was a "service charge." The service to which he referred as the basis of such a charge consisted of inspection visits, by a committee of the corporation, to the property proposed to be mortgaged, and of several subsequent examinations to ascertain whether a covenant in the mortgage for the opening of streets and the laying of gas and water mains on the mortgaged land was being performed. It was stated, however, by the president of the company that a similar commission was regularly charged by it on all mortgage loans. There was in this instance a provision for releases of portions of the mortgaged property upon payments at a specified rate per front foot, but the five per cent. commission was always charged regardless of the presence or absence of a release clause. In answer to the question whether the commission was not simply a bonus, the president said: "No, we have salaries and expenses of operation to pay and we have to pay our examination committees." Replying to a suggestion that all financial institutions had such expenses, and to the inquiry as to what there was "extra about this mortgage" that justified the commission, the witness said that there "wasn't anything extra," that it was "the character of the business," that a mortgage company "comes into existence for the simple reason that the average builder cannot place mortgages of this character with a financial institution, and you cannot take the margin of safety and have the handling of the mortgages, the care that has to be exercised in handling them." When asked whether his company would have made any

charge to the applicants for the services of the committee in examining the property if the loan had not been made, the president said that the company had never established the practice of exacting an examination fee when a loan was not granted.

The property mortgaged as security for the $35,000 loan consisted of a tract of suburban land which was platted for building development. It was valued at $100,000 in the application, but the lending company's committee estimated it to be worth $50,000. The loan was to be repaid in quarterly instalments during the period of three years. After the deduction of the five per cent. commission for the mortgagee, two per cent. commission to a broker who obtained the loan for the borrower, and one per cent. commission to the mortgagee's attorney for the title examination, the proceeds of the loan were applied to the payment of pre-existing liens. The only service rendered by the mortgagee to the mortgagors in the transaction was the lending of the money and its application to the specified payments. When the money had been fully applied, at the time the loan was made, no further action remained to be taken by the mortgagee for the mortgagors' benefit. For the use of the money loaned, the compensation of the mortgagee could not legally exceed the six per cent. interest which was agreed to be paid. It was permissible for the parties to contract for the rendition by the mortgagee of a service collateral to that which was directly incident to the lending of the money, and for such an additional service a promise of payment could legally be made and enforced. If, for example, a mortgagee is required to perform continuing duties in the application of the loan to the cost of building or other operations, over which he is intended to have supervision, a service would be thus contemplated for which a commission, fairly proportionate to its value, could be charged without being subject to the suspicion that it was an effort to circumvent the law against usury. In this instance there was no actual or promised service by which the commission to the mortgagee can be supported. The acts of the mortgagee in regard to the exam-

ination of the property prior to the loan, and its subsequent investigations to discover whether a covenant in the mortgage to develop certain streets was being fulfilled, were only such attentions as lenders would naturally give to the protection of their own interests.   To call the commission a "service charge" could not give it a quality which it did not in fact possess.   So far as this transaction is concerned, it was plainly a means of increasing the rate of compensation for the use of the money loaned.

In deciding the case of *Andrews v. Poe,* 30 Md. 486, the Court said: "Now, if there be a principle clearly established by judicial decision, it is that the laws against usury ought to be strictly enforced.   Such, indeed, has been the uniform course of decisions under statutes penal in their character, and by which the usurious contract was wholly avoided, or the userer visited with the penalties of the law; and there is certainly no reason why, in this state, the law should be less rigidly enforced, where no contract is set aside or penalty imposed, but the excessive interest alone forfeited.   It has so happened, from the earliest times to the present, that every device and shift which the wit of man could suggest, have been invoked to exempt contracts for illegal interest from the operation of the law, but courts have not hesitated, in every case, to tear off, with unsparing hands, the mask under which it has been attempted to conceal the usury, and to declare the true nature of the transaction."

In *Brown v. Real Estate Investment Co.,* 134 Md. 493, a "service charge" of five per cent. of a loan, in addition to legal interest, was treated as usurious and the case decided on that theory.   Other Maryland cases in which the usury law has been applied, and which support in principle our conclusion in the present case are: *Walter v. Foutz,* 52 Md. 147; *Bowdoin v. Hammond,* 79 Md. 173 ; *Commercial Assn. v. Mackenzie,* 85 Md. 132; *Penrose v. Canton Nat. Bank,* 147 Md. 200; *Carozza v. Federal Finance Co.,* 149 Md. 223.

*Decree affirmed, with costs.*