WILLIAMS v. GARRETT et ux.

No. 35367. Feb. 3, 1953.

*254 P. 2d 369.*

Bruce & Rowan, Oklahoma City, for plaintiff in error.

Edward J. Fauss, Oklahoma City, (Priest, Belisle & Fauss, Oklahoma City, of counsel), for defendants in error.

CORN, J. This is an action by Ada v. Williams to collect on a promissary note and to foreclose a real estate mortgage, securing the payment of the note, given by the defendants, Sims Garrett and Priscilla Garrett, husband and wife.

The defendants in their answer deny all the allegations in plaintiff's petition, except such as are specifically admitted to be true. Defendants admit the execution of the note and mortgage as alleged in plaintiff's petition, but plead that on January 10, 1951, they paid to plaintiff on said note and mortgage $100, and asked that they be given credit on said note and mortgage for that amount.

As for further answer and cross-petition the defendants allege and state:

"That they adopt each and all allegations contained in their answer in this their cross-petition by reference the

same as though the matters and things therein set forth were recapitulated herein.

"That on or about the 11th day of April, 1950, in the City of Oklahoma City, Oklahoma, the defendants entered into a written contract with the plaintiff, a copy of which contract is attached to plaintiff's petition, marked Exhibit 'A', whereby the said plaintiff for the corrupt purpose of receiving and taking a greater sum for the loan of her money than at the rate of ten per cent per annum, as provided by law, agreed to lend the defendants for a period of eight months the sum of One Hundred and Fifty Dollars ($150.00) and in addition to pay the charges incurred in having the abstract covering the property described in plaintiff's petition brought to date and examined on the condition that the defendants would pay to said plaintiff for the loan of said money and for having said abstract brought to date and examined, the sum of Four Hundred and Five Dollars ($405.00) by January 1, 1951; that the abstract consisted of one hundred and two entries (102), for which a reasonable charge would have not been more than Twenty-Five Dollars ($25.00) and the charges for bringing said abstract to date were Seventy-five Dollars ($75.00 for inserting seventy-five (75) entries; that, therefore, the plaintiff reserved and charged in the note and mortgage attached to plaintiff's petition, the sum of One Hundred and Fifty-Five Dollars ($155.00) interest for the loan of Two Hundred and Fifty Dollars ($250.00) for a period of eight months, when the highest rate of interest that could legally be charged on said sum for said period was Eighteen Dollars and Seventy-two Cents ($18.72).

"Defendants further state that the transaction hereinabove described was negotiated by Dr. E. J. Williams, the husband of the plaintiff, and that the said Dr. E. J. Williams was in said transaction the duly authorized agent of the plaintiff and acting for the plaintiff in said transaction, and that if the said Dr. E. J. Williams was not plaintiff's agent the plaintiff ratified his acts and is estopped to deny them.

"That by reason of the premises aforesaid the plaintiff has become liable to the defendants for double the amount of interest charged amounting to Three Hundred and Ten Dollars ($310.00), together with Two Hundred ($200.00) attorney's fees and all the costs herein, and cancellation of mortgage shown by petition of Plaintiff."

The reply of the plaintiff to the answer and cross-petition of the defendant filed herein alleges and states:

"(1) That she denies each and every material allegation contained in the answer and cross-petition of the defendants filed herein, except such as are hereinafter specifically admitted.

"(2) Plaintiff admits that the defendants did pay $100.00 on said note and mortgage, and for which they are entitled to credit on said note and mortgage.

"(3) Plaintiff denies that there was any usury charged, contracted withheld or attempted to be collected. That she paid out the money as per contract and defendants received the benefit of the same.

"(4) Plaintiff further states that said contract was made fair and reasonable with the defendants, and was free and voluntary, and for a good and valuable consideration, as set out in said contract.

"(5) That in the negotiations of said loan between the plaintiff and the defendants, Dr. E. J. Williams was acting as the agent of the defendants, and not the agent of the plaintiff.

"(6) Plaintiff further states that the charge of usury made by the defendants is a mere scheme and trick to avoid paying their just and honest debt and obligation."

A jury was waived, and after a trial to the court the following judgment, in part, was rendered:

"That there is an unpaid balance on the note sued on in the sum of $305.00 that said note was given for loan of money, and that the plaintiff reserved and collected interest in excess of 10% per annum, and that the transaction between plaintiff and defendants was in violation of the usury laws of the state of Oklahoma; that defendants

were charged the sum of $155.00 as interest and are entitled to have and recover against the plaintiff double such amount so charged as interest, or the total sum of $310.00, of which said sum of $305.00 should be credited in full settlement and satisfaction of the said balance of the note sued on, and that defendants should have and recover from the plaintiff the sum of $5.00 and attorneys' fees of $200.00, and that the mortgage described in the petition of the plaintiff should be fully satisfied and should be discharged and released of record."

The evidence reflects that the defendants bought the property, which is located in Oklahoma City, in February of 1950, for $750, while they were living in Headrick, Oklahoma; that defendant Sims Garrett had an uncle in Oklahoma City whom they went to visit, and while there was called on by the plaintiff's husband, Dr. E. J. Williams, who had heard that they wanted to borrow $150 on the property. They had never seen either Dr. E. J. Williams or plaintiff prior to this time, nor had they communicated with either of them in any manner. Dr. E. J. Williams told them that he would loan the money to them himself, and gave them his card which they introduced in evidence. Plaintiff's name was not mentioned by him at that time, or at any subsequent time. He advised them that in return for the $150 they would have to pay him $405, of which $150 was to go for preparation of the abstract, $25 for examination of the title, $75 interest, and $5 additional interest for letting them have $50 on the day the note and mortgage were signed, but prior to the abstract being examined.

Then he took them to J. J. Bruce's office and dictated the contract.

The original contract introduced in evidence was signed by the plaintiff, but the copy given to the defendants, and introduced in evidence, was signed by Dr. E. J. Williams as the contracting party, which fact is admitted by him.

After the defendants signed the note and mortgage, he gave them $50 and about two weeks later he sent $100 to them at their home at Headrick. This is all the money defendants ever received and all that they were supposed to receive by the terms of the contract.

The evidence also shows that the abstract cost $75. Dr. E. J. Williams testified that he paid plaintiff's attorney, J. J. Bruce, $100 for examination of the title, but introduced no evidence to support this statement.

The note and mortgage became due on January 1, 1951, at which time, at the request of the defendant Sims Garrett, they were given an additional ten days; whereupon, Sims Garrett borrowed $100 from his father and paid this to Dr. E. J. Williams on the 10th day of January, 1951. When he accepted the money he told Sims Garrett he was giving him credit for only $50 of the $100 paid and that the balance was for waiting the extra ten days. He then gave Sims Garrett a receipt for $100 showing a balance of $355, or a credit of only $50, which receipt was introduced in evidence by the defendants.

The plaintiff in her brief admitted that only $75 was paid for the abstract. The contract which plaintiff signed provided that the defendants were to get only $150 and the trial court found that this was all the defendants ever received. The trial court further found that a reasonable fee for the examination of the abstract would not exceed $25, which leaves a balance of $155 charged as interest. It is possible that if the plaintiff had put on any testimony or evidence to the effect that Dr. E. J. Williams had actually paid $100 for examination of the abstract, the court would not have charged the excess of $75 as interest. The only evidence to this effect was that of the witness who admitted that he had been convicted of a felony, and the fact that he attempted to penalize the defendants $50 for making payment ten days late, together with testimony of the defendant Priscilla Garrett that he told them there would be only a charge of $25

for examination of the abstract, formed a reasonable basis for the court to conclude that only $25 in fact was paid for the examination of the abstract.

It would have been a simple matter for the plaintiff's attorney, J. J. Bruce, to introduce his records showing such payment, or at least take the stand and so testify, but he did not see fit to do so. Therefore, the court was justified in concluding that in fact such amount was never paid. Then the only possible alternative would be for the court to decide what would have been a reasonable fee for such examination.

In Barnhart et ux. v. Richardson, 134 Okla. 19, 272 P. 418, we held:

"The courts will not permit an act forbidden or penalized by statute to be done either directly or indirectly, nor acquiesce in the employment of any shift or device by which the lender may receive more than ten per cent per annum for the use * * * of money."

In the body of the opinion, we said:

"Money paid for services of the agent of the lender in procuring a loan is money paid the lender or for his benefit."

In Bean v. Rumrill, 69 Okla. 300, 172 P. 452, Syllabus 1, we held:

"Where a money lender engages an agent to make loans of money, and such agent procures a contract with the borrower by which the borrower agrees to pay 10 per cent per annum interest from the time the money is lent, and in addition thereto, as a part of the transaction, the agent requires the borrower to contract for or pay an additional sum for the use of the money under the guise of a socalled commission, the entire contract is construed together and is usurious."

We further quote from the body of the opinion as follows:

"While some of the courts have upheld reasonable charges for actual services performed by the agent of the lender, none, so far as we are advised, have gone to the extent of permitting charges unreasonable and unfair, though under the guise of 'commission' to stand, but in all such cases have construed the entire negotiations as one contract, and held the same to be usurious when their effect was the contracting to pay more than the highest lawful rate of interest. We think that each business should bear its own expenses, and that money paid for services of the agent of the lender, in procuring a loan, is money paid to the lender or for his benefit, and if, in paying for such services, the borrower contracts to pay a sum or sums in excess of the highest lawful rate of interest, the contract is usurious."

In 21 A. L. R. 799, appears an annotation on this subject. Paragraph (d) at page 813 reads as follows:

"In the same way transactions by which one member of a family receives commissions for alleged services in negotiating loans from another member of the family have been held usurious, where they appeared to be merely devices by which an excessive compensation was received for the loan." (Citing many cases.)

At page 815 of 21 A. L. R., the second paragraph of §4 reads:

"Excessive interest cannot be hidden under pretended charges for expense of drawing papers, examining security, and the like." (Citing many cases.)

At page 873 of 21 A. L. R., paragraph (b) reads as follows:

"The actual and reasonable expense of preparing abstracts and of investigating and passing upon the title of the borrower to property which is to be mortgaged to secure the loan cannot ordinarily be made the basis of a charge of taking usury. As to unreasonable charges of this character, see supra II d, and as to such charges, as devices to conceal usury see supra, II f, 4."

Paragraph (d), page 802 of 21 A. L. R., reads:

"The reasonableness as to amount, of charges against the borrower, seems to be given considerable weight in determining their character as usurious or otherwise. Thus, many cases refer to

the unreasonableness of such charges as a ground for considering them illegal in this respect." (Citing many cases.)

At page 803 of 21 A. L. R.:

"While in Mayfield v. British & A. Mortgage Co. (1916), 103 S.C. 152, 88 S.E. 370, it was held that, although a borrower could be prepared to pay a reasonable attorney's fee for preparing the abstract of title of the property to be mortgaged as security for the loan, yet if the charge was unreasonable, and such unreasonable portion carried the interest over the maximum legal rate, it would be usury."

We hold that there is sufficient evidence reasonably tending to support the judgment of the trial court.

Judgment affirmed.

HALLEY, C.J., and WELCH, DAVISON, O'NEAL, WILLIAMS, and BLACKBIRD, JJ., concur.