383 P.2d 173

**E. L. GRADY and Lorna A. Grady, husband and wife, Appellants,**

v.

**Lewis B. PRICE and Wilma F. Price, husband and wife, Appellees.**

**No. 7053.**

Supreme Court of Arizona.

In Division.

June 26, 1963.

Merchant, Parkman, Miller & Pitt, Tuscon, for appellants.

Hirsch, Van Slyke, Richter & Ollason, Tucson, for appellees.

JENNINGS, Justice.

The appellants E. L. Grady, a mortgage broker and licensed attorney, and his wife, brought suit to foreclose certain mortgages which secured construction loans made by or through him to the appellees. Appellees counterclaimed for the amount of charges exacted by appellants on these loans alleging that such charges were usurious under A.R.S. § 44–1202.[1] The foreclosure suits were carried to completion, and the issues of the counterclaim were then tried to a jury. At the close of the evidence, the court, acting on cross motions, directed a verdict in favor of the appellants with regard to certain loans in which appellant E. L. Grady had acted as broker and had obtained the loan funds from third party lenders. With regard to four loans where Grady had acted as the lender, lending money belonging to himself, his wife or the marital community, the court directed a verdict in favor of the appellees, ruling that the charges exacted for the loans were usurious. Judgment was entered for the appellees in the amount of $7,683.66, this being the amount of the charges paid by

---

1. § 44–1202.

"No person shall directly or indirectly take or receive in money, goods, or things in action, or in any other way, any greater sum or any greater value for the loan or forbearance of any money, goods, or things in action, than eight dollars on one hundred dollars for one year. Any person, contracting for, reserving or receiving, directly or indirectly, any greater sum or value, shall forfeit all interest."

them in connection with the usurious loans. Judgment was entered for the appellants on all the third party loans. Only that portion of the judgment in favor of the appellees has been appealed.

Appellee L. B. Price was engaged in developing a residential subdivision, and the loans were made to provide funds for the construction of houses therein, pursuant to an agreement which contained this paragraph:

> "In consideration of the financing by the said E. L. Grady and for his assistance in planning and developing the subdivision and for his help and advice generally, he shall have the exclusive right, as a broker, to place any and all construction loans along with adequate fire coverage to protect said loans on homes built in the subdivision. Construction loans on the homes to be built in the new subdivision created shall be for a period of 6 months with interest at 7%, and a brokerage fee of 3%. [Appellees] shall at their expense supply a mortgagee's policy or a letter of committment, whichever is required by the lender. In all cases prior to placing a construction loan plans and specifications for the homes to be constructed shall be supplied E. L. Grady and shall be approved by him. A bonus of $500 shall be paid to E. L. Grady on each home on said premises on which a construction loan is placed, said payment to be made when the construction loan is liquidated."

It is appellee's position, and the trial court so ruled, that the exaction of the 3% "brokerage fee"[2] and the $500 "bonus" made the charges for the loan of money exceed the 8% statutory limit in those transactions where the appellant was himself the lender.

■ In their first assignment of error the appellants contend that the usury statute does not apply to these transactions because they involved loans of credit and not of money. The appellants' testimony concerning the details of the transactions makes clear that money belonging to the appellants, drawn from their joint banking account, was disbursed to the appellee in performance of the loan agreements. We have difficulty in understanding just how one person can loan his credit to another, and then make a loan of his own funds based on that credit. To approve such schizoid transactions would completely nullify the usury law. This assignment is without merit.

The appellants next assign as error the failure of the trial court to submit to the

2. Since the agreement called for a loan term of 6 months, the 3% "brokerage fee" computed on the full amount of the loan, is actually an additional charge of 6% per annum.

jury the issue of whether the $500 bonus payments were in fact intended to be compensation for legal services rendered to the appellee. The appellant testified that he rendered legal service and advice at the time the subdivision was set up, and that appellee consulted with him on many matters relating to the development which were unrelated to the construction loans. He stated that appellee tendered to him a lot in the subdivision as compensation for these services, but he refused this offer and it was later agreed that he would be paid $500 for each lot in the subdivision at the time the construction loan was liquidated. This item was included as the "bonus" in the agreement quoted above.

 If, as appellant contends, the $500 bonus was intended as compensation for services rendered apart from the loan transaction and not as compensation for the use of money, the loans were not usurious merely because payment of this compensation was to be made contemporaneously with payment of the loan. Douglass v. Boulevard Co., 91 Conn. 601, 100 A. 1067 (1917); Sanders v. Nicolson, 101 Ga. 739, 28 S.E. 976 (1897). Appellees denied that the "bonus" was intended as compensation for legal services, and further denied that services other than those normally involved in loan transactions had been performed by the appellant. They testified the "bonus" was an additional charge exacted for the loans. With this controversy of fact, it was error not to submit to the jury the issues of the parties' intent in contracting for the "bonus", and the reasonableness of the $500 charge in relation to the services rendered. See Douglass v. Boulevard Co., supra. A lender may not disguise additional compensation for the use of money in an unreasonable or fictitious charge for services rendered, Williams v. Garrett, 208 Okl. 53, 254 P.2d 369 (1953); Real Estate Trustee, Inc. v. Rebhan, 153 Md. 624, 139 A. 351 (1927); Douglass v. Boulevard Co., supra.

The third assignment of error relates to the 3% "brokerage fee." Appellants attempt to justify this fee as a reasonable charge for expenses and services rendered in connection with the loans. These services and expenses were described as inspection of the site, inspection of the plans and specifications for the proposed house, preparation of the note and mortgage, recording of papers, preparation of a disbursal agreement, checking progress on the building when payment was requested under the disbursal agreement and preparation of a satisfaction memorandum.

 A lender, in addition to the highest rate of interest, may charge the borrower reasonable fees for services rendered in connection with the loan, or require reimbursement of expenses incurred, such as

the examination of title, recordation of papers, and perhaps traveling expenses and other similar expenses. Bowden v. Gabel, 105 Mont. 477, 76 P.2d 334 (1937); Rossberg v. Holesapple, 123 Utah 544, 260 P.2d 563 (1953). But such charges must be limited to specific services rendered and expenses incurred, and may not be made a device through which additional interest or profit on the loan may be exacted, Klett v. Security Acceptance Co., 38 Cal.2d 770, 242 P.2d 873 (1952). Haines v. Commercial Mortgage Co., 200 Cal. 609, 254 P. 956, 255 P. 805, 53 A.L.R. 725 (1927). Nor may a lender charge to a borrower the ordinary overhead expenses of his business. Thrift Finance Co. v. State, 351 S.W.2d 653 (Tex.Civ.App.1961); Vee Bee Service Co. v. Household Finance Corp., Sup., 51 N.Y.S.2d 590 (1944), aff'd, 269 App.Div. 772, 55 N.Y.S.2d 570 (1945); Real Estate Trustee, Inc. v. Rebhan, supra.

While it is possible that the appellant Grady could have charged the appellees for some of the expenses he incurred in connection with the loans if such charges had been specific and in reasonable amount,[3] we cannot approve a provision by which the lender adds a set percentage of the amount loaned as a blanket fee to cover in-

definite expenses, some of which are certainly part of the normal overhead of the lending business, where that fee plus the rate of interest exacted exceeds the maximum rate of return permitted by the statute. To do so would open an easy avenue for avoidance of the usury penalties.

Appellants argue that appellees failed to prove their intent to violate the usury statute. It is not necessary to show that the appellants were conscious of the illegality of the transaction. "It is sufficient [to show] that the loan contract unequivocally calls for an excessive rate of return on the indebtedness. In such case, the intent to exact usury is presumed." Britz v. Kinsvater, 87 Ariz. 385, 393, 351 P.2d 986, 991 (1960). The portion of the agreement quoted above, as applied to a situation where the appellant is lending his own money, unequivocally calls for a rate of return greater than the 8% per annum permitted by law, and appellants' unsuccessful attempt to justify the 3% "brokerage" charge has failed to rebut the presumption of intent arising therefrom.

Appellants contend, however, that the four loans with which we are concerned were made out of the separate funds of

---

**3.** Grady testified that in some of the transactions he charged the appellees, in addition to the brokerage fee and bonus, an additional small fee for drafting of papers and making inspections. The propriety of these charges has not been questioned by the appellees.

258

the wife, and that the husband was acting as a brokerage agent for a third party, his wife. The courts have generally held contracts to be usurious where a fee for brokering the loan is charged by a near relative of the lender, e. g., Knoup v. Carver, 74 N.J.Eq. 449, 70 A. 660 (1908), and cases collected in 52 A.L.R.2d at 778. Moreover, both appellants testified that the loan funds came from a joint banking account, in which the claimed separate funds of the wife were commingled with funds belonging to her husband or to the marital community. The wife was unable to state with any degree of definiteness just how much money she had as her separate property, or how it could be traced from an inheritance in 1924. Under these circumstances, the funds are presumed to be community funds, Evans v. Evans, 79 Ariz. 284, 288 P.2d 775 (1955); Barr v. Petzhold, 77 Ariz. 399, 273 P.2d 161 (1954). We hold the exaction of the 3% "brokerage fee" to be usurious under the circumstances of this case.

The case is remanded for determination of the fact issues relating to the $500 bonus charged on each of the four lots, as discussed above. In all other respects the judgment is affirmed.

UDALL, V. C. J., and STRUCKMEYER, J., concurring.