UNITED STATES of America,
Plaintiff,

v.

DESERT GOLD MINING COMPANY,
an Arizona corporation et al.,
Defendants.

Civ. No. 4883.

United States District Court
D. Arizona.

Jan. 16, 1968.

Final Judgment April 4, 1968.

---

Richard S. Allemann, Asst. U. S. Atty., for the United States.

Olgerd W. Kalyna, of Beer & Kalyna, Phoenix, Ariz., for defendant Desert Gold.

Roger Kaufman, of Lewis, Roca, Beauchamp & Linton, Phoenix, Ariz., for defendant Marlin K. Edwards.

CRAIG, District Judge.

This matter having come on for trial on the 9th day of January, 1968, evidence having been adduced on the part of the plaintiff, and the matter having been submitted to this Court by counsel for the plaintiff and counsel for the defendant, Desert Gold Mining Company, and the Court having considered the evidence and being fully advised in the premises, finds as follows:

1. That, the patents to the lands described in the complaint herein were issued by mistake as alleged in the second cause of action in the complaint on file herein;

2. That, the plaintiff is entitled to the relief prayed for against the defendant, Desert Gold Mining Co., in the second cause of action in the complaint filed herein;

3. That, the defendant, Desert Gold Mining Company, is entitled to the purchase monies paid with the patent applications, being the amount of $2.50 per acre.

Wherefore, it is ordered, adjudged and decreed:

(1) That, the said patents and deeds be delivered up by the defendants; that the same, together with record thereof, be adjudged to be void and cancelled;

(2) That, title to the lands described in Exhibits A through N, attached to the complaint and appended hereto and made a part hereof, is hereby quieted in the plaintiff, United States of America, and the defendant, Desert Gold Mining Co. is forever estopped from having or claiming any right, title or interest to the above-described premises adverse to that of the plaintiff;

(3) That, the defendant, Desert Gold Mining Company, have judgment in the amount of $20,500.00 against the plaintiff;

(4) That, each party bear its own costs.

## OPINION AND FINAL JUDGMENT

This is a motion to reconsider and vacate a partial summary judgment entered in this cause on January 15, 1964, as well as a motion to make final the judgment of this Court of January 16, 1968.

In 1961 the United States issued·eight patents, pursuant to 30 U.S.C. § 21 et seq., for 8,200 acres of public land to Desert Gold Mining Company, and others. The patents were issued upon asserted proof that gold had been discovered on the subject property. After the patents issued, Desert Gold on June 8, 1962, executed a note and mortgage on the property in favor of Marlin K. Edwards in the face value of $100,000. Be-

tween August 1, 1962 and April 15, 1963, Edwards assigned all of his interest in the property to six other individuals.

In 1963 the Bureau of Land Management of the Department of the Interior determined that the patents had been obtained by fraud or mistake and referred the case to the Department of Justice. This suit to rescind the patents was instituted on September 9, 1963.

Edwards, as holder of a mortgage on the patented lands, was joined as a defendant. On October 4, 1963, Edwards filed a motion for partial summary judgment as to himself on the grounds that he was a bona fide purchaser for value as to his interest in the property, and that he was entitled to judgment as a matter of law. The United States opposed this motion for two reasons: first, that there was a genuine issue as to whether the mortgage was a bona fide purchase, and second, that appropriate relief could not be determined until all of the facts had been established at trial.

On December 16, 1963, Phoenix Title and Trust Company (now Transamerica Title Insurance Company) was permitted to intervene as a party defendant and to join in the motion for summary judgment.

Argument was heard on December 24, 1963, on the motion for summary judgment; documents relating to the mortgage transaction were introduced.

The United States then filed a motion for summary judgment, contending that the consideration for the note and mortgage was usurious and could not serve as the basis for a claim against the United States.

On January 15, 1964, a minute entry was made granting defendants' motion, denying plaintiff's motion, and ordering that the judgment and order lodged with the Court by Edwards on November 20, 1963, be signed and filed. By that judgment it was determined that Edwards was a bona fide purchaser; it was ordered that should the United States ultimately prevail in this case, Desert Gold was to be declared constructive trustee

first for Edwards, and second for the United States.

On January 16, 1968, this Court entered judgment against Desert Gold in favor of the United States cancelling the patents and quieting title to the property in the United States against Desert Gold. Before entry of judgment, Edwards and Transamerica Title moved that the order quieting title in the United States not be made final. That motion was denied. On January 17, 1968, the United States moved this Court to reconsider and vacate the prior partial summary judgment. Edwards and Transamerica opposed this motion. Hearings were held on this motion on January 18, 1968, and March 12, 1968.

■ All parties agree that the partial summary judgment entered on January 15, 1964, is not a final, appealable order; revision is possible at any time prior to the entry of a final judgment adjudicating all of the claims raised in this law suit. Rules 54(b) and 56(d), F.R. Civ.P. See, 3 Barron and Holtzoff, Federal Practice and Procedures, § 1241, p. 193; E. I. DuPont & Co. v. United States Camo Corp., 19 F.R.D. 495 (W.D.Mo., 1956). Pursuant to the decision in Castner v. First National Bank of Anchorage, 278 F.2d 376 (9th Cir., 1960), this Court has reopened the motion for summary judgment and will vacate the order entered January 15, 1964.

■ The United States argues that Edwards and his assigns have no interest in the patented property because the instant mortgage does not constitute a bona fide purchase. The elements of bona fide purchase are good faith, for valuable consideration, without notice. Ordinarily a court of equity will not cancel an instrument in the hands of a bona fide purchaser. United States v. California and Oregon Land Co., 148 U.S. 31, 40–41, 13 S.Ct. 458, 461–462, 37 L. Ed. 354 (1893). No one questions that Edwards was without notice of the mistake in the granting of the patents. The government does contend that the interest rate of the mortgage and note is

usurious, and therefore constitutes an illegal consideration preventing Edwards from qualifying as a good faith purchaser. The requisite elements for usury in Arizona are (1) an unlawful intent; (2) the subject matter must be money or money's equivalent; (3) a loan or forbearance; (4) the sum loaned must be absolutely, not contingently, repayable; and (5) there must be an exaction for the use of the loan of something in excess of what is allowable by law. See Seargeant v. Smith, 63 Ariz. 466, 163 P.2d 680 (1945) and Blaisdell v. Steinfeld, 15 Ariz. 155, 137 P. 555 (1914). The mere fact of intentionally doing something which is forbidden by statute constitutes unlawful intent sufficient to disqualify someone from bona fide purchase. Blaisdell v. Steinfeld, supra. The second, third and fourth elements of usury are clearly established by the facts in this case. The only question revolves around the fifth element. If that is established, then, pursuant to the rule of Blaisdell v. Steinfeld, supra, the first element will also be proved.

The maximum interest rate permitted in Arizona is eight per cent (8%). A.R.S. § 44–1202. Pursuant to an authorizing resolution of its board of directors, a corporation may agree to pay interest at a rate up to twelve per cent (12%) per annum. A.R.S. § 10–177. There is no authorizing resolution from Desert Gold which could qualify for this special exemption. The action of the board of directors of June 11, 1962, "ratified, confirmed, and approved" a loan "for the sum of $100,000 at 8% interest." The documents in evidence in this case—the original note, mortgage, escrow statement and escrow instructions—show that the mortgage was executed in the face amount of $100,000, from which, in addition to other charges, $10,000 was deducted as a "service fee." Desert Gold as mortgagor was obligated, however, to pay eight per cent (8%) per annum on the face amount of $100,000 for the life of the mortgage—four years.

Two recent Arizona cases, Modern Pioneers Ins. Co. v. Nandin, 103 Ariz. 125,

437 P.2d 658 (1968), and Altherr v. Wilshire Mortgage Corp., 6 Ariz.App. 576, 435 P.2d 83 (1967), discuss in detail the Arizona law of usury. In *Modern Pioneers*, supra, 437 P.2d at 664, the Supreme Court of Arizona quotes with approval from its earlier decision in Grady v. Price, 94 Ariz. 252, 383 P.2d 173 (1963):

> " * * * A lender may not disguise additional compensation for the use of money in an unreasonable or fictitious charge for services rendered, * * *
>
> * * * * * *
>
> "A lender, in addition to the highest rate of interest, may charge the borrower reasonable fees for services rendered in connection with the loan, or require reimbursement of expenses incurred, such as the examination of title, recordation of papers, and perhaps traveling expenses and other similar expenses. * * * But such charges must be limited to specific services rendered and expenses incurred, and may not be made a device through which additional interest or profit on the loan may be exacted, * * * Nor may a lender charge to a borrower the ordinary overhead expenses of his business. * * *
>
> "While it is possible that [the lender] could have charged [the borrower] for some of the expenses he incurred in connection with the loans if such charges had been specific and in reasonable amount, we cannot approve a provision by which the lender adds a set percentage of the amount loaned as a blanket fee to cover indefinite expenses, some of which are certainly part of the normal overhead of the lending business, where that fee plus the rate of interest exacted exceeds the maximum rate of return permitted by the statute. To do so would open an easy avenue for avoidance of the usury penalties." 94 Ariz. at 256–257, 383 P.2d at 175–176.

In the instant case the escrow instructions clearly show that $10,000 was first subtracted as a service fee; then an addi-

tional $5,000 was subtracted as a brokerage fee for Phoenician Properties; $41.-08 was deducted for 1961 taxes and penalty; $9.00 was deducted for recording fees; $140.00 was deducted as an escrow fee; and $332.00 was deducted for title insurance.[1] Of the original $100,000 loan, Desert Gold received $84,477.92, while being obliged to pay eight per cent (8%) interest on $100,000. The approved deductions enumerated in Grady v. Price, supra, were separately subtracted from the loan and constituted no part of the $10,000 service charge.

Edwards maintains that he performed significant services to earn his ten per cent (10%) commission. These included travel and telephone calls to locate individuals to lend the money, Edwards's expertise in the brokerage business, and his personal guarantee to the lenders. However, Edwards testified that these charges amounted to "overhead"[2] for the brokerage business; that the six individuals who were eventual assignees of the loan were each his "regular customers,"[3] including several relatives; and that in reality the $10,000 fee was merited because "[b]asically we lent the money."[4]

Edwards also argues that the fee was justified because in this instance he was the broker but not the lender of the money. A lender receives his compensation from interest; a broker must obtain his remuneration from service fees or commissions. The law generally recognizes this distinction. This argument, however, is not supported by the testimony and exhibits in this case. Edwards testified that originally he put up $45,-000 of his own money from his personal portfolio of $150,000 to $200,000 to cover half of the initial loan.[5] The first assignment—an undivided one-half interest—was made on August 1, 1962, three months after the mortgage was executed. The remaining five assignments, covering the remaining one-half of the loan, were made between November 1, 1962, and April 15, 1963. For more than ten months Edwards was both lender and broker. In addition, even after the assignment was completed, Edwards retained significant interests in the loan—the title insurance ran to him; the personal guarantees on the note ran to him; it was he who purchased the property at the foreclosure sale.

It is incumbent on any Court to look beyond the written documents to determine the real nature of the transaction. Seargeant v. Smith, supra. In Altherr v. Wilshire Mortgage Corp., supra, it was said that when one makes loans in his own name with another's funds, or pretends to act as broker while using his own funds, any commission or brokerage fee in excess of the maximum legal rate of interest will amount to usury. 6 Ariz.App. 576, 435 P.2d at 87.

In this case it is apparent that at least as to part of the loan, Edwards was using his own money, charging the maximum interest rate, and additionally, exacting a substantial service charge.

This Court finds that in light of the other fees deducted, the size of the brokerage commission, and the nature of the services performed by Edwards, the $10,-000 fee was unreasonable. This Court additionally finds that these charges were intentionally made and amount to an exaction in excess of the legal allowable rate. All of the requisite elements of usury having been established, this Court finds that this loan was illegal and constituted usury.

Having determined that the consideration for the loan was usurious, it is incumbent on this Court to determine what the final disposition of the case shall be.

The Arizona penalty for usury is forfeiture of all interest. A.R.S. § 44–1202. Were this a suit between

1. See transcript of December 24, 1963 hearing, pp. 21–2.

2. Hearing on March 12, 1968.

3. See transcript of December 24, 1963, hearing, pp. 12–3.

4. ibid., p. 22.

5. ibid., p. 24.

Desert Gold and Edwards, that might be the proper remedy. However, here we are dealing with Edwards and an innocent third party, the United States, rather than the mortgagor. In this case the third party must prevail over the usurious mortgagee.

■ In a similar situation where the bona fides were questioned, the Arizona Supreme Court held that:

"Equity will cancel deeds and encumbrances on real property if tainted with usury or given for a usurious consideration." Blaisdell v. Steinfeld, supra, 15 Ariz. at 199, 137 P. at 573.

The general rule is that if a mortgage is usurious, a third person in interest may invoke the rule that the mortgagee is not a bona fide purchaser, and that latent equities will prevail over such a mortgage. See 91 C.J.S. Usury § 124c. In In re Elmore Cotton Mills, 217 F. 810, 815 (S.D.Ala.1914), the District Court held that:

"* * * if the mortgage contract debt is usurious, any third person in interest may invoke the rule that the mortgagee is not a bona fide holder, and latent or secret equities must prevail over it."

An Alabama state case holding the same thing is Southern Home Building and Loan Ass'n v. Riddle, 129 Ala. 562, 29 So. 667, 671 (1901):

"* * * usurious interest so infects and taints the transaction as to preclude the * * * mortgagee from the defense of being a bona fide purchaser for value without notice of outstanding equities in third parties, * * * [which permits] the holders of such equities to the same measure of relief against the mortgagee as they would have had against the mort-

gagor had the mortgage not been executed."

Accord, Lewis v. Hickman, 200 Ala. 672, 77 So. 46 (1917); Meyer et al. v. Cook, 85 Ala. 417, 5 So. 147 (1888); Smith v. Lehman et al., 85 Ala. 394, 5 So. 204 (1888). In addition, the last case holds that the burden of proof in such a case is on the lender to show that no usury was present.

■ The usual rule contended for by Edwards that usury is only a personal defense not available to a third party not a party to the contract, Collister v. Inter-State Fidelity Building and Loan Ass'n of Utah, 44 Ariz. 427, 38 P.2d 626 (1934), is not applicable to this situation because the equities demand that the party making the innocent mistake, the United States, prevail over the knowing wrongdoer, Edwards.

Because Edwards can still look to the title insurance and to the personal guarantees made by Tom Moran and Fenberg [6] he is not without a remedy even if the title to the subject property is quieted in the United States.

It is, therefore, the conclusion of this Court that Edwards cannot qualify as a bona fide purchaser, and is not entitled to the usual guarantees the law has erected to protect bona fide purchasers for value without notice.

It is ordered that the order of January 15, 1964, granting a partial summary judgment and finding Edwards to be a bona fide purchaser, and creating a constructive trust in Desert Gold in favor of Edwards is vacated.

It is further ordered that the judgment of this Court of January 16, 1968, is made final and title to the patented lands is quieted in the United States against all parties to this lawsuit.

6. ibid., pp. 14–5.