551 P.2d 92

Kenneth KAMRATH and Mary Elizabeth Kamrath, husband and wife, and Pioneer National Trust Co. of Arizona, a corporation, as Trustee under Trust No. 10943, Appellants,

v.

GREAT SOUTHWESTERN TRUST CORPORATION, an Arizona Corporation, Individually and as Trustee for Trust No. 1212, Pima Mortgage Corporation, a corporation, Twin Cities Development Corporation, an Arizona Corporation, Great Southwestern Corporation, a corporation, and John Doe and Jane Doe, 1 through 10, Appellees.

No. 2 CA–CIV 2050.

Court of Appeals of Arizona, Division 2.

June 23, 1976.

Rehearing Denied July 27, 1976.
Review Denied Sept. 14, 1976.

Browning & Wilson by William D. Browning, Tucson, for appellants.

Russo, Cox, Dickerson & Cartin, P.C. by Thomas G. Cox, Tucson, for appellees.

## OPINION

HATHAWAY, Judge.

Appellants filed an action contending that loans made to them in the amount of $235,000 at 10% per annum, were rendered usurious by the lender requiring payment of 4% brokerage commissions ($9,400) and a study and consultation fee in the sum of $35,000 to other corporations of the same corporate conglomerate in a sum totaling $44,400.00. After depositions were taken, judgment was entered against appellants on the basis of cross-motions for summary judgment, and this appeal was taken.

The facts are undisputed and disclose that appellees are a corporate conglomerate with Great Southwestern Corporation, the parent corporation, owning all of the stock in the other three corporations, i.e., Great Southwestern Trust Corporation, Pima Mortgage Corporation, and Twin Cities Development Corporation. All stock in Great Southwestern Corporation is owned by Walter Hall, William St. Louis, and Royce Agnew through a voting trust. The corporations have interlocking directors and officers and to a great extent share offices, which are linked by an intercom system. Mr. Hall and Mr. Agnew are either president or vice-president of all 4 corporations.

In May of 1972, appellants sought a loan from one of appellee corporations by contacting Mr. Hall. Appellants learned that in order to obtain the loan it would be necessary to pay a brokerage commission in the sum of $9,400 to Pima Mortgage Corporation and a fee of $35,000 to Twin Cities Development Corporation for a study of the contemplated use of the loan. Subsequently, appellants obtained the loan from appellee, Great Southwestern Trust Corporation, in the sum of $235,000 at 10%

interest, appellants having agreed to the charges required to be paid to the other two corporations.

Appellants maintain they are entitled to recover the brokerage commission, the feasibility study and consultation fee, and a forfeiture of all interest paid or to be paid. We agree with their position.

Usury is the exacting of charges "directly or indirectly" for the loan of money in excess of what the law has set. A.R.S. § 44–1202. In determining whether a transaction is usurious, the court "will disregard the form and look only to the substance." *De Wulf v. Bissell*, 83 Ariz. 68, 316 P.2d 492 (1957); *Modern Pioneers Insurance Company v. Nandin*, 103 Ariz. 125, 437 P.2d 658 (1968). A lender will not be permitted to make unreasonable charges in addition to lawful interest and avoid the penalties of usury. In *Grady v. Price*, 94 Ariz. 252, 383 P.2d 173 (1963), our Supreme Court stated:

> "A lender, in addition to the highest rate of interest, may charge the borrower reasonable fees for services rendered in connection with the loan, or require reimbursement of expenses incurred, such as the examination of title, recordation of papers, and perhaps traveling expenses and other similar expenses.
>
> \* \* \* \* \* \*
>
> But such charges must be limited to specific services rendered and expenses incurred, and may not be made a device through which additional interest or profit on the loan may be exacted,
>
> \* \* \* \* \* \*
>
> Nor may a lender charge to a borrower the ordinary overhead expenses of his business."

In *Modern Pioneers Insurance Company v. Nandin*, supra, also dealing with parent-subsidiary corporation manipulations, the court approvingly quoted the following from Ballentine on Corporations (Rev.1946 edition):

> " ' \* \* \* [A]fter all, it comes down to a question of either agency or of good

faith, honesty and fairness in the use of corporate privilege for legitimate ends. If a corporation is controlled by another and is manipulated by the parent for its own purposes and its own interests, to the prejudice of innocent third parties, or the public welfare, it may be necessary to hold the controlling party responsible.' " 103 Ariz. at 129, 437 P.2d at 662.

The court then reiterated from *Employer's Liability Assurance Corporation v. Lunt*, 82 Ariz. 320, 323, 313 P.2d 393 (1957):

> "The corporate fiction will, however, be disregarded upon the concurrence of two circumstances; that is, when the corporation is, in fact, the alter ego of one or a few individuals and when the observance of the corporate form would sanction a fraud or promote injustice. . . ."

Guided by the foregoing principles, we have no trouble finding the $35,000 charge for Twin Cities' services unreasonable. The work took one employee 73 hours. Agnew, a member of the loan committee which reviewed appellants' loan application, performed the job for Twin Cities at a cost to appellant of $35,000, and was paid a monthly salary of $700 by that company. Walter Hall admitted that he would consider the fee excessive if either Pima or the Trust Corporation had to pay it.

The brokerage commission is likewise unsupportable. Appellants initially approached Walter Hall. His donning a broker's hat before submitting the loan application to his loan corporation, rather than affording the customer a valuable service made him the victim of a costly charade.

Appellees' position in the trial court centered strongly on their contention that the lender, Trust 1212, was an entity in and of itself, hence the corporate defendants are insulated from transactions conducted through the trust. The trust declaration provides that it is a trust "of Great South-

western Trust Corporation." Great Southwestern Trust Corporation has exclusive management and control of the trust. The trustee's powers include the power to deal absolutely with notes and mortgages made from the common fund, to borrow money from the fund, to settle or compromise its claim.

Investors in the trust receive a "trust certificate" entitling them to a specific amount of interest on the investment, and every 90 days the corporation, trustee, can increase or decrease the stated percentage the investor is to receive. Surplus income over the liability to the investors is payable to the trustee as trustee's fees.

The instant loan was made by Great Southwestern Trust Corporation using funds from Trust 1212, costing the trustee 7% or 8% interest and loaned by the trustee at 10% interest. It is thus apparent that the trustee was to receive a portion of the 10% interest rate charged, and to the extent of that beneficial interest, the trustee was a beneficial participant in the loan. The interest to the investors in Trust 1212 was fixed, regardless of the interest charged on the loan. As our Supreme Court said in *Modern Pioneers Insurance Company*, supra:

> " 'The court will look to and construe the transaction by its substance and effect, rather than its form, and, if, from a consideration of the whole transaction, it becomes apparent that there exists a corrupt intent to violate the usury laws, the court will permit no scheme or device, however ingenious, to hide the face of the usury.' " 103 Ariz. at 130, 131, 437 P.2d at 664.

Aside from the proposition that a trustee will not be permitted to profit out of dealing with the trust, except for his lawful compensation, 90 C.J.S. Trusts § 248c (1955), the transaction discloses a parent corporation and three wholly-owned subsidiaries—the officers of each being the officers of the others. The parent is owned by the officers. The brokerage commission and consultation fee paid the sister corporations, prerequisite to the loan, are unjustified from the standpoint of reasonableness for the services to which the charges are attributed. Appellees have not met their burden to establish the reasonableness of the charges. *Altherr v. Wilshire Mortgage Corp.*, 104 Ariz. 59, 448 P. 2d 859 (1968).

Appellees' activities threading through thin corporation veils are not obscured in substance. They operated to extract interest grossly in excess of that permitted by law. Terming the charges brokerage commissions and study fees only furnishes a weak camouflage. We hold the transaction to be usurious and direct that judgment be entered forfeiting all interest and the commission and fee discussed herein. The cause is remanded to determine the precise amount involved and it is ordered that judgment be entered for appellants against appellees in that amount taking into account sums paid on the forfeited items plus interest.

Reversed and remanded.

HOWARD, C. J., and KRUCKER, J., concur.